# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

DESERAE TURNER, Individually; M.T. and
B.T., both minors, by and through their
mother, LEKISHA TURNER; and J.T.M. and
J.R.M., both minors, by and through their
mother JESSICA MURRAY; and JESSICA
MURRAY, Individually,

        Plaintiffs,

vs.

FLOYD COUNTY SCHOOL DISTRICT;
BOARD MEMBER DR. MELINDA
STRICKLAND, Officially; BOARD
MEMBER CHIP HOOD, Officially; BOARD
MEMBER DR. TONY DANIEL, Officially;
BOARD MEMBER JAY SHELL, Officially;
and BOARD MEMBER DANNY WAITS,
Officially,

        Defendants.

CIVIL ACTION FILE NO.

Case No.: 4:22-cv-00113-LMM

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

COME NOW Defendants Floyd County School District (hereafter "FCSD"),

Board Member Dr. Melinda Strickland, Officially, Board Member Chip Hood,

Officially, Board Member Dr. Tony Daniel, Officially, Board Member Jay Shell,

Officially, and Board Member Danny Waits, Officially, (hereafter, collectively the

"Board Members") and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby file their  Memorandum of Law in support of its Motion to Dismiss for failure to state a claim as to all claims against the Board Members, and Counts I, III, IV, and V against FCSD in Plaintiffs' Complaint.

## I.  STATEMENT OF FACTS

On May 17, 2022, Plaintiffs filed a Complaint against FCSD and Board Members making the following claims against all Defendants. The Board Members are all named in their official capacity as policymaking officers of the Board (Plaintiffs' Complaint ¶ 1.):

Count I:   Denial of Equal Protection in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §1983

Count II:   Infringement on Free Speech (by Dress Code and other Disciplinary Policies) in violation of the First Amendment to the U.S. Constitution and 42 U.S.C. §1983

Count III:   Infringement on Free Speech (for Punishment for Planned Protest) in violation of the First Amendment to the U.S. Constitution and 42 U.S.C. §1983

Count IV:   Race Discrimination in violation of Title VI, 42 U.S.C. §2000d

Count V:   Retaliation in violation of Title VI, 42 U.S.C. §2000d

These claims arise out of general allegations of racial animosity by some white students and teachers towards African American students at Coosa High School (*Id.* ¶ 36.), and events occurring during the week of October 4th-October 8th, 2021. (*Id.* ¶ 68.). Coosa High School is part of the Floyd County School District. (*Id.* ¶ 1.).

Plaintiffs allege that they reported instances of racial animosity, including racist social media posts, to Coosa High teachers and administrators, but no action was taken. (*Id.* ¶ 43.) They further allege that teachers discriminately applied the school dress code—permitting the wearing of Confederate flag apparel but prohibiting apparel with "Black Lives Matter" messaging or images. (*Id.* ¶ 54.)

Plaintiffs additionally allege that in early October two white students wore Confederate flag apparel and carried a large Confederate flag around campus all day. (*Id.* ¶¶ 61-63.) They allege this incident was reported, but that no disciplinary action whatsoever was taken against the students who carried the flag. (*Id.* ¶¶ 65-66.) This same week, Plaintiffs planned a protest to occur on October 8th. (*Id.* ¶ 68.) Plaintiffs allege that school administrators disciplined African American students who planned the protest, but not white students. (*Id.* ¶¶ 73-74.)

The only references to the Board Members within the Complaint are the aforementioned statement that the Board Members are named in their official

capacity (*Id.* ¶ 1.), and that the school's dress code is promulgated by the Board. (*Id.* ¶ 5.). None of the Board Members are otherwise mentioned individually or collectively in the Complaint. There are no allegations of any actions by any Board Member related to the incidents which are the subject of the Complaint, much less any allegations of wrongdoing by any Board Member.

The Complaint does not contain any allegations that any Defendant receives federal funds for any purpose.

## II.    ARGUMENT AND AUTHORITIES

### A.    Legal Standard for a Rule 12 (b) (6) Motion to Dismiss

Dismissal of an action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is proper when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Claims Against the Board Members

### 1. Counts I through III should be dismissed as to the Board Members as individuals are not subject to suit in their official capacity under § 1983

Plaintiffs have named the Board Members as Defendants in their official capacities. By suing an agent of a governmental entity in his official capacity, the Plaintiff is essentially suing the governmental entity. *Payne v. DeKalb Cnty.*, 414 F. Supp. 2d 1158, 79 (N.D. Ga. 2004) ("[O]fficial capacity suits 'generally represent only another way of pleading an action against a[] [government] entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *Burnett v. Fulton Cnty. Bd. of Educ.*, No. 1:07-CV-0300, 2007 WL 9702284, at *6 (N.D. Ga. June 20, 2007), *report and recommendation adopted by Burnett v. Fulton Cnty. Bd. Of Educ.*, No. 1:07-CV-300, 2007 WL 9702328 (N.D. Ga. Aug. 24, 2007). Naming the individual Board Members in their official

capacities is the functional equivalent of suing the governmental employer. *Burnett*, 2007 WL 9702284, at \*6.

In Georgia, a county board of education does not have capacity to sue or be sued. *Id.* at \*5 (quoting *Cook v. Colquitt Cnty. Bd. Of Edu.*, 261 Ga. 841, 841 (1992)). Since suing an agent of a governmental entity under § 1983 is the same as suing the entity itself, the Board members cannot be sued under § 1983.

Additionally, Plaintiffs have not alleged the Board members engaged in any acts or wrongdoing. In fact, none of the individual Board Members are mentioned or identified in the Complaint, other than in the style of the case. There is no allegation that can serve as a legal basis for Board Member liability under § 1983.

## 2. Counts IV and V should be dismissed as to the Board Members because they did not receive federal funds

Title VI of the Civil Rights Act of 1964 states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

"Title VI invokes Congress's power under the Spending Clause, U.S. Const., art. I, § 8, cl. 1, to place conditions on the grant of federal funds." *Barnes v. Gorman*, 536 U.S. 181, 181 (2002). Title VI "condition[s] an offer of federal

funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).

To state a claim under Title VI, Plaintiffs must allege that the Defendant: (1) engaged in racial discrimination; and (2) received federal funds. *See* 42 U.S.C. § 2000d; *Shotz v. City of Plantation* 344 F. 3d 1161, 1170 (11th Cir. 2003) ("Title VI [] precludes liability against those who do not receive federal funding, including individuals."); *Washington v. Veterans of Foreign Wars of the U.S.*, U.S., No. 1:04-CV-137(WLS), 2005 WL 2031108, at *1 (M.D. Ga. Aug. 19, 2005) (holding that plaintiff's claim under Title VI was barred as a matter of law as there was no showing or allegation that the defendant received federal funds).

Counts IV and V of Plaintiffs' Complaint alleging violations of Title VI by the Board Members are barred as a matter of law and should be dismissed as the Complaint does not allege that Board Members received federal funds.

3. **Counts IV and V should be dismissed as to the Board Members because individuals are not liable as a matter of law under Title VI.**

To hold individuals who do not receive federal grants liable for violations of Title VI would "exceed the allowed scope of government enforcement action under

the statute." *Shotz v. City of Plantation,* 344 F.3d 1161, 1170 (11th Cir. 2003). "It is beyond question, therefore, that individuals are not liable under Title VI." *Id.; see also Buchanan v. City of Bolivar,* 99 F.3d 1352, 1356 (6th Cir. 1996) (dismissing claims against individual defendants under Title VI because they were not "the entity allegedly receiving the financial assistance."); *F.V. by and through Vargas v. Randolph Ctny. Bd. Of Educ.*, No. 2:20-CV-142, slip op. at 8 (M.D. Ala. March 31, 2022) (granting individual Defendants' motion to dismiss Title VI claims); *Powers v. CSX Transp., Inc.*, 105 F. Supp.2d 1295, 1312 (S.D. Ala. 2000) (holding that an individual who does not receive any federal grants cannot be sued under Title VI); *Farmer v. Ramsay*, 41 F.Supp.2d 587, 592 (D. Md. 1999) ("The lower federal courts have generally held that the proper defendant in a Title VI case is an entity rather than an individual.") (internal quotations omitted).

Plaintiffs' Title VI claims against the Board Members should be dismissed as a matter of law because individuals may not be held liable for Title VI violations.

**C.    Claims against the FCSD**

**1.    Counts IV and V should be dismissed as to the FCSD because it is not alleged that they received federal funds**

Plaintiffs have not alleged that the FCSD received federal funds. As stated in Section B.1., supra, the receipt of federal funds is a necessary element of a claim under Title VI. Since Plaintiffs have failed to allege this essential element against the FCSD, Plaintiffs Title VI claims against the FCSD should be dismissed for failure to state a claim.

2. **Count I and Count III against the FCSD should be dismissed as Plaintiffs have not alleged injury resulting from the application of a policy or custom**

Count I claims the FCSD violated § 1983 by demonstrating deliberate indifference to racist remarks and actions by white students and white teachers, and for inconsistently applying Coosa High's disciplinary policies. (Plaintiffs' Complaint ¶ 80.) Count III claims the FCSD violated § 1983 by disciplining Plaintiff students for planning a peaceful protest.

Liability under § 1983 cannot be imposed on governmental entities under a theory of *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 (1978); *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015). Instead, a plaintiff must "establish that the government unit has a 'policy or custom' that caused the injury." *Weiland v. Palm Beach Ctny. Sheriff's*

*Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

In the present case, Plaintiffs allege that the discriminatory and unconstitutional actions of Coosa High are derived from inconsistent administration of disciplinary policies adopted by Defendants. (Complaint ¶¶ 2, 3.) However, Plaintiffs' Complaint fails to allege or identify a disciplinary policy or a policy regarding protests, which was supposedly applied in a discriminatory manner.

This is similar to *Burnett v. Fulton County Board of Education*, in which the only reference in Plaintiff's Complaint to a policy or custom was the allegation: "All of Defendants' conduct described herein was accomplished pursuant to the official policy and custom of Fulton County Board of Education, or was committed or authorized by officials whose acts can be fairly deemed to be the actions of Fulton County Board of Education." *Burnett*, 2007 WL 9702284, at *8. This allegation made a conclusory allegation but failed to sufficiently identify a policy or custom. *Id.*; *see also Weiland v. Palm Beach Ctny. Sheriff's Office*, 792 F.3d 1313, 1329-30 (11th Cir. 2015) (affirming district court's dismissal of plaintiff's 1983 claims when complaint did not contain "sufficient, non-conclusory

allegations that there is an official 'policy or custom'" of wrongdoing); *Guerra v. Rockdale Ctny.*, 420 F. Supp. 3d 1327, 1347 (N.D. Ga. 2019) (dismissing plaintiff's 1983 claims for failure to allege a city policy or custom that allegedly led to the violation of plaintiff's constitutional rights); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1272 (S.D. Fl. 2015) (granting defendant's motion to dismiss plaintiff's 1983 claims when Complaint did not "allege specific facts detailing a widespread policy or custom, and only included a "couple of incidents and a conclusory assertion").

Plaintiffs have failed to identify a disciplinary policy that exists or was allegedly applied in a discriminatory manner. Such conclusory allegations are insufficient to place Defendants on notice as to the grounds upon which these § 1983 claims are based. As a result of Plaintiffs failing to identify a policy or custom on which Counts I and III are based, these claims against the FCSD should be dismissed for failure to state a claim.

## IV.   CONCLUSION

The Plaintiffs have failed to allege necessary elements of each of their claims against the Board Members, and for Counts I, III, IV, and V against FCSD.

Defendants respectfully request that all of Plaintiffs' claims, except for Count II against the FCSD, be dismissed.

Respectfully submitted this 26th day of July, 2022.

**HALL BOOTH SMITH, P.C.**

*/s/ Richard N. Sheinis*

_____

RICHARD N. SHEINIS
GA State Bar No. 639865
***Attorneys for Defendants***

11215 North Community House Road
Suite 750
Charlotte, NC 28277
Phone: (980) 859-0380
Fax:      (678) 539-1601
Email:  rsheinis@hallboothsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2022, I electronically filed **Defendants'
Memorandum in Support of Their Motion to Dismiss** with the Clerk of Court
using the CM/ECF system which will automatically send email notification of such
filing to the following attorneys of record.

I further certify that this document has been prepared in Time New Roman
font (14 pt.) and formatted in accordance with the Local Rules of the United States
District Court for the Northern District of Georgia.

This 26th day of July, 2022.

Harry M. Daniels
GA Bar No. 234158
The Law Offices of Harry Daniels
233 Peachtree St NE, Suite 1200
Atlanta, GA  30303
T:  678-664-8529
E: daniels@harrymdaniels.com

Artur Davis
HKM Employment Attorneys, LP
2024 3rd Avenue, North Suite 307
Birmingham, AL 35203
T: 205-881-0935
(pro hac vice application to be submitted)
E: adavis@hkm.com
***Attorneys for Plaintiff***

I. Stewart Duggan
GA Bar No. 232207
Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP
PO Box 5007
Rome, Georgia  30162-5007
T:  706-291-8843
F:  706-234-3574
E:  isduggan@brinson-askew.com
***Attorney for Defendants***

Shannon Liss-Riordan
Anastasia Doherty
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
T: 617-994-5800
(pro hac vice applications to be
submitted)
E:  sliss@llrlaw.com
     adoherty@llrlaw.com
**Attorneys for Plaintiff**

**HALL BOOTH SMITH, P.C.**

*/s/ Richard N. Sheinis*
_____
RICHARD N. SHEINIS
GA Bar No.: 639865
**Attorneys for Defendants**

11215 North Community House Road
Suite 750
Charlotte, NC 28277
Phone:  (980) 859-0380
Fax:      (678) 539-1601
E-mail: rsheinis@hallboothsmith.com

KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by Burnett v. Fulton County Board of Education, N.D.Ga., August 24, 2007

2007 WL 9702284
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Sherra BURNETT, et al., Plaintiffs,

v.

FULTON COUNTY BOARD OF
EDUCATION, et al., Defendants.

CIVIL ACTION FILE NO. 1:07-CV-0300-JTC-AJB
|
Signed 06/19/2007
|
Filed 06/20/2007

**Attorneys and Law Firms**

Cheryl Barnes Legare, Edward D. Buckley, Steven Eric Wolfe, Buckley & Klein, Atlanta, GA, for Plaintiffs.

Eric Alan Brewton, Randall C. Farmer, Brock Clay Calhoun Wilson & Rogers, Marietta, GA, for Defendants.

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

ALAN J. BAVERMAN, UNITED STATES MAGISTRATE JUDGE

**\*1** Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), and N.D. Ga. R. 72.1(D)(2). Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties or, if a party is not represented, upon that party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within ten (10) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this 19th day of June, 2007.

Attachment

## UNITED STATES MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

Currently before the Court is Defendants' Motion to Dismiss, [Doc. 15], and Plaintiffs' Motion to Amend Complaint, [Doc. 23]. For the reasons set forth herein the undersigned **RECOMMENDS** that the motion to dismiss, [Doc. 15], be **GRANTED IN PART AND DENIED IN PART** and that the motion for leave to amend, [Doc. 23], be **GRANTED IN PART AND DENIED IN PART**.

### *Procedural History*

On February 2, 2007, seven females - - Sherra Burnett, Felicia Hedgebeth, Susan Hertwig, Barbara McGuire, Gloria Parker, Cynthia Williams, and Michele Williams (collectively "the Plaintiffs") - - filed a civil action against the Fulton County Board of Education ("FCBE") and the following twelve individuals in their official and individual capacities (collectively "Defendants"): (1) Julia Bernath, a white female and President of the FCBE; (2) Linda Bryant, an African-American female and Vice-President of the FCBE; (3) Linda Schultz, a white female and member of the FCBE; (4) Katie Reeves, a white female and member of the FCBE; (5) Gail Dean, a white female and member of the FCBE; (6) Ashley Widener, a white female and member of the FCBE; (7) Catherine Maddox, a white female and member of the FCBE; (8) James Wilson, a white male and Superintendent of the Fulton County School District [1] ("FCSD"); (9) Patty Rooks, a white female and Assistant Superintendent of Elementary

Curriculum and Instruction of the FCSD; (10) Ronnie Wade, an African-American male and Assistant Superintendent of Secondary Curriculum and Instruction for the FCSD at the relevant time; (11) Catherine White, a white female and the Executive Director of the Professional Development Department of the FCSD; and (12) Katie Lovett, a white female and Chief Information Officer of the FCSD. [Doc. 1]. In Plaintiffs' three-count complaint, they allege that: (1) Defendants denied Plaintiffs their Equal Protection rights under the Fourteenth Amendment, in violation of 🚩 42 U.S.C. § 1983, (Count 1); (2) the FCBE engaged in race discrimination against Plaintiffs, in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") (Count 2); and (3) the FCBE retaliated against Plaintiffs Hertwig, McGuire, and Burnett, in violation of Title VII (Count 3). [Id. ¶¶ 87-97]. Based on these allegations, Plaintiffs indicated that they sought, *inter alia*, punitive damages against Defendants and that they were entitled to injunctive relief. [Id. ¶ 95 & at 2, 35].

**\*2** Defendants moved to dismiss Plaintiffs' complaint on April 6, 2007. [Doc. 15]. Plaintiffs responded to the motion to dismiss on May 7, [Docs. 21-22], and Defendants filed a reply on May 22, [Docs. 24-25]. Also on May 7, Plaintiffs filed a motion for leave to amend their complaint, [Doc. 23], and Defendants responded on May 24, [Doc. 26]. Plaintiffs then filed a reply on June 11. [Doc. 27]. With briefing completed, the Court turns to the merits of the parties' motions.

### *Facts* [2]

The FCBE is the governing body of the Fulton County School District. There are 86,659 students enrolled in Fulton County schools, 45 percent of whom are African-American or Hispanic. [Doc. 1 ¶ 2]. The Fulton County School District entered a unitary status agreement in federal court indicating that the school district could not discriminate on the basis of, *inter alia*, race in making employment decisions affecting school staffing. [Id. ¶ 3]. The FCBE has "lavished funding" on the schools in the predominantly white schools to the detriment of the predominantly Hispanic and African-American schools. [Id. ¶ 4]. In August 2005, Defendant White began working for the FCBE as the Executive Director of the Department of Professional Learning. [Doc. 1 ¶ 45]. In April of 2006, the FCBE and its individual members terminated 45 employees in the Department of Education. Of those fired, 42 (or 93 percent) were African-American, including 6 of the 7 Plaintiffs. [Id. ¶ 34]. Plaintiffs state:

> All of Defendants' conduct described herein was accomplished pursuant to the official policy and custom of [FCBE], or was committed or authorized by officials whose acts can be fairly deemed to be the actions of [FCBE].

[*Id.* ¶ 33].

### A. Sherra Burnett

Burnett, a 52-year old African-American female, began working for the FCSD in October 1992. She most recently worked as the Professional Assistant to Plaintiff Hertwig, who was the Administrator of the FCSD's Professional Learning Programs. As a result, Burnett managed a resource center for teachers in the southern portion of Fulton County. [*Id.* ¶ 44]. When White became Burnett's supervisor, White harassed Burnett and made arbitrary changes to how Burnett ran the teaching center. [*Id.* ¶¶ 45-47]. White treated Burnett's caucasian counterpart, Beckey Jones, more favorably. [*Id.* ¶ 48]. On March 29, 2006, Burnett filed an employee complaint against White with the FCSD's Chief of Human Resources ("HR"), alleging racial discrimination and a hostile work environment. [*Id.* ¶ 49]. On April 13, 2006, Plaintiff learned that the FCBE terminated her, but not Jones who had less seniority, because of an alleged reduction in force ("RIF"). [*Id.* ¶¶ 50-51]. The decision to terminate Plaintiff was made by Defendants Wade, Rooks, and White at the direction of the FCBE. [3] [*Id.* ¶ 50].

### B. Felicia Hedgebeth

**\*3** Plaintiff Hedgebeth is an African-American female who began working for the FCBE on January 3, 2001, as a Technology Specialist II. Hedgebeth was then promoted to a Technology Specialist III position. [*Id.* ¶ 52]. Hedgebeth learned on April 13, 2006, that the FCBE directed Defendant Lovett to terminate her. The FCBE decided to retain Jason Brown, a white male with less seniority than Plaintiff, in another Technology Specialist III position. [*Id.* ¶ 53].

### C. Susan Hertwig

Plaintiff Hertwig, a white female, began working for the FCBE in August 1987. She worked nine years as an Administrator of the Professional Learning Program for the FCBE, which required her to coordinate teacher certification. [*Id.* ¶ 54]. Hertwig worked closely with Plaintiff McGuire and had visible friendships with several African-American colleagues. [*Id.* ¶ 55]. When the FCBE hired Defendant White, Hertwig fell under White's supervision. [*Id.* ¶ 56]. During a meeting between White and Judi Gullat, another FCBE employee, White directed Gullat to inform Hertwig that White would not work with Hertwig if she continued to be friends with Plaintiff McGuire. [*Id.* ¶ 57]. White harassed Hertwig because of her friendships with African-American employees, and White eliminated Hertwig's job responsibilities. [*Id.* ¶¶ 58-59]. Hertwig filed a HR grievance against White on March 10, 2006, and then filed a formal HR complaint against White on March 26 in which Hertwig described White's reduction of Hertwig's responsibilities and White's unprofessional conduct toward African-American employees. [*Id.* ¶¶ 60-61]. On April 12, 2006, Hertwig received an "unsatisfactory" job evaluation, and she learned of her termination one day later due to an alleged RIF. [*Id.* ¶¶ 62-63]. This termination decision was made by Wade, Rooks, and White at the direction of the FCBE. [*Id.* ¶ 63].

### D. Barbara McGuire

Plaintiff McGuire, an African-American female, became a FCBE employee in July 1990 as an Assistant Principal, and after one year became a Principal. After holding the position of Principal for 10 years, Plaintiff became the Coordinator of the FCBE's Department of Professional Learning. [*Id.* ¶ 66]. When the FCBE hired White, McGuire was under White's supervision after which White repeatedly intimidated and harassed McGuire, systematically reduced McGuire's job duties, prevented McGuire from attending meetings, and directed McGuire to move offices without providing assistance. [*Id.* ¶¶ 67, 69-71]. On February 28, 2006, White informed Jones that she planned on terminating McGuire. [*Id.* ¶ 75]. On March 10, McGuire filed a grievance with HR against White, and then on March 26, McGuire filed a formal complaint against White, indicating that White's harassment appeared to be racially motivated. [*Id.* ¶¶ 76-77]. McGuire received an "unsatisfactory" rating for her annual evaluation on March 28. [*Id.* ¶ 78]. McGuire was then informed that she was terminated on April 13. This decision was made by Defendants Wade, Rooks, and White at the direction of the FCBE. [*Id.* ¶ 79]. Kathleen Yarbrough, a white female, worked as a Professional Learning Teacher Facilitator for the FCBE, but did not lose her job despite having less seniority than Plaintiff. [*Id.* ¶ 80].

### E. Gloria Parker

Gloria Parker, an African-American female, began working for the FCBE in August of 1988. During the period relevant to the instant litigation, Parker worked as a Professional Assistant III to the Coordinator for Community and Adult Education. [*Id.* ¶ 81]. Parker learned on April 13 that she was being terminated as a part of an alleged RIF. Other professional assistants with less seniority were retained. The decision to terminate Parker was made by Defendants Wade and Rooks at the direction of the FCBE. [*Id.* ¶ 82].

### F. Cynthia Williams

 **\*4** Williams, an African-American female, began working for the FCSD in January 1989. During the relevant period, Williams worked as Coordinator of Community Adult Education for the FCSD. [*Id.* ¶ 83]. Williams learned that the FCBE was terminating her on April 13, 2006, as part of a RIF. The FCBE retained a white Coordinator and Teacher Facilitator with less seniority than Williams. The decision to terminate Williams was made by Wade and Rooks at the direction of the FCBE. [*Id.* ¶ 84].

### G. Michelle Williams

Williams, an African-American female, began working for the FCSD in September 1999 as Professional Assistant to the Media Services Department. [*Id.* ¶ 85]. Williams learned on April 13, 2006, that she would be terminated as part of a RIF. Wade and Rooks at the direction of the FCBE made the decision to terminate Williams. [*Id.* ¶ 86].

### *Fulton County Board of Education Motion to Dismiss, [Doc. 15]*

#### A. Parties' Contentions

Defendants argue that the complaint should be dismissed against the FCBE because school boards are not legal entities capable of being sued under Georgia law. [Doc. 15-2 at 4]. Alternatively, Defendants argue that Plaintiffs have not stated a 🔖 § 1983 claim against the FCBE because Plaintiffs failed to allege that any discriminatory actions amounted to an official policy or custom of the FCBE. [*Id.* at 5-6].

Specifically, Defendants first argue that there is no 🔖 § 1983 liability against the FCBE because Plaintiffs have not alleged

an express policy of racial discrimination or retaliation or alleged a policy of discrimination in the RIF procedures. [*Id.* at 7]. Defendants next argue that Plaintiffs have not alleged a custom of race discrimination or retaliation by the FCBE. Defendants assert that the allegations about the unitary status agreement do not show a custom of discrimination given that the Fulton County schools are not subject to a desegregation order. As for the allegations of the disparity of funding, Defendants contend that this does not relate to employment practices. [*Id.* at 8-9]. Defendants then argue that Plaintiffs have not alleged any final policymakers acted in a discriminatory manner. [*Id.* at 10]. Defendants further argue that Plaintiffs have not made any allegations of purposeful discrimination. [*Id.* at 10-11]. Defendants also argue that Plaintiffs have not alleged a policy or custom was the moving force behind any decision because Plaintiffs have not even identified a policy or custom. [*Id.* at 11-12]. Assuming that the FCBE is a proper legal entity, Defendants finally argue that Plaintiffs have not sufficiently alleged facts to raise Title VII hostile work environment claims. [*Id.* at 12-13].

Plaintiffs first respond that their proposed amended complaint addresses Defendants' argument that the FCBE is the wrong legal entity because they clarify that they are suing the Fulton County School District ("FCSD"). [Doc. 22 at 2-3]. Plaintiffs next argue that they have adequately pled their § 1983 claims against the FCSD because they alleged that: (1) the individual Defendants acted under the direction of and with the authorization of the FCSD; and (2) the FCSD favored the white student body over the minority students. [*Id.* at 3-4]. Plaintiffs then argue that paragraph 33 of their complaint sufficiently alleges a custom or policy at the pleadings stage to survive a motion to dismiss. [*Id.* at 5-6]. They note that Defendants are seeking a level of detail that is not possible at the motion to dismiss stage when the litigation is in its infancy. [*Id.* at 8]. Plaintiffs also argue that they need not identify a final policymaker in their complaint to survive the motion to dismiss. [*Id.* at 9]. Plaintiffs further assert that they have sufficiently pled race discrimination, and their proposed amended complaint addresses any concerns. [*Id.* at 10].

**\*5** Defendants reply that the § 1983 claim against the FCBE should be dismissed because Plaintiffs never alleged an official policy or custom of the FCBE and they never allege an official policy of discrimination. [Doc. 23 at 3-4]. Defendants also argue that Plaintiffs have not alleged any discriminatory purpose behind any of Defendants' actions or that a custom or

policy was the moving force behind the racial discrimination. [*Id.* at 5].

### B. Motion to Dismiss Standard

A court will grant a FED. R. CIV. P. 12(b)(6) motion to dismiss if a plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957) *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)[4] ). "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. 'Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.' " *Swierkiewicz*, 534 U.S. at 515 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ).

Dismissal of a complaint for failure to state a claim is proper when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Therefore, "a pleading [cannot] survive dismissal when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1271 (11th Cir. 2004). The complaint need not provide detailed factual allegations, but it must give sufficient factual allegations to "to raise a right to relief above the speculative level," that is the complaint must give "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1965, 1974. In other words, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 1965 n.3. However, "[s]pecific facts are not necessary." *Erikson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).

## C. Discussion

### 1. Capacity to be Sued

The capacity to be sued is determined by state law. FED. R. CIV. P. 17(b); Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992). The Georgia Supreme Court has stated: "In a long line of cases, we, and the Court of Appeals, have held that a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." Cook v. Colquitt County Bd. of Edu., 261 Ga. 841, 841, 412 S.E.2d 828, 828 (1992) (citations omitted).

**\*6** It is clear, as Plaintiffs' concede, that the FCBE is not a legal entity that can be sued under Georgia law. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITH PREJUDICE** on all claims against the FCBE.

Although the Court recommends dismissal of all claims against the FCBE, the Court will discuss Defendants other arguments concerning whether Plaintiffs' sufficiently pled § 1983 and Title VII hostile work environment claims against the governmental entity that employed the Defendants (and Plaintiffs), namely the Fulton County School District, in this portion of the Report and Recommendation. Plaintiffs have raised their § 1983 claims against the individual Defendants in their official capacities. [*See* Doc. 1]. "The United States Supreme Court has noted that official capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " Payne v. DeKalb County, 414 F. Supp. 2d 1158, 1179 (N.D. Ga. 2004) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985) ). Thus, if a plaintiff sues an agent of a governmental entity in his official capacity under § 1983, the plaintiff is essentially suing the governmental entity. Id. at 1179-80. Also, if a plaintiff sues an individual in his official capacity under Title VII, the plaintiff is essentially suing the employer. *See* 42 U.S.C. § 2000e(a), (b); Clanton v. Orleans Parish Sch. Bd., 649 F.2d 1084, 1094 n.13 (5th Cir. July 6, 1981) ("The defendants in their official capacities are proper defendants, since they are agents of the [governmental entity]."); [5] *see also* Busby

v. City of Orlando, 931 F.2d 764, 776, 772 (11th Cir. 1991) ("We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly."). As a result, Plaintiffs' decision to name the individual Defendants in their official capacities is the functional equivalent of suing Plaintiffs' governmental employer, which turns out to be the Fulton County School District, not the FCBE. As a result, Plaintiffs have essentially brought Title VII and § 1983 claims against the school district by way of these official capacity claims. The Court, therefore, discusses Defendants' remaining arguments concerning whether claims have been brought properly against the governmental entity.

### 2. Hostile Work Environment

Defendants contend that Plaintiffs have made insufficient allegations to plead hostile work environment claims, and Plaintiffs respond that they are not raising hostile work environment claims, [*see* Doc. 22 at 10]. As a result, the Court finds that Plaintiff never raised any hostile work environment claims such that there are no hostile work environment claims due to be dismissed. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss concerning hostile work environment claims be **DENIED AS UNNECESSARY.**

### 3. Section 1983 Claims

**\*7** At the motion to dismiss stage, the Supreme Court has held that there is no heightened pleading requirement in § 1983 cases against municipalities. *See* Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993). Thus, the Court must only determine whether Plaintiffs have pled sufficient facts to give fair notice concerning the grounds of their § 1983 claims against the school district.

"[T]he Supreme Court has held that counties (and other local government entities) are 'persons' within the scope of § 1983, and subject to liability." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). For a governmental entity to be liable under § 1983, the plaintiff must establish:

"(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* Defendants contend that Plaintiffs have not sufficiently pled each element of a 🚩 § 1983 claim against the governmental entity. The Court therefore discusses each element separately.

### a. Violation of Constitutional Rights

🚩 Section 1983 states in relevant part that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 🚩 42 U.S.C. § 1983. The Fourteenth Amendment's Equal Protection clause "ensures a right to be free from intentional discrimination based upon race." 🚩⚠ *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003). As a result, there is "an equal protection right to be free from employment discrimination." *Id.* Such a constitutional deprivation may be brought by way of 🚩 § 1983. *See* 🚩 *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). A party establishes a violation of the Equal Protection clause by proving discriminatory intent or purpose. 🚩 *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995).

When a 🚩 § 1983 claim is being used as a parallel remedy for a violation of Title VII, as in the instant case, the elements of the two causes of action are the same. *See* 🚩 *Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005). At the motion to dismiss stage, the Supreme Court has held that there is no heightened pleading requirement in Title VII employment discrimination cases. 🚩 *Swierkiewicz*, 534 U.S. at 511-15. By extension, there is therefore no heightened pleading standard for establishing a violation of an individual's constitutional rights in 🚩 § 1983 cases where a Title VII claim is a parallel remedy.

The Court concludes that Plaintiffs have sufficiently pled constitutional violations. In the 🚩 § 1983 count, Plaintiffs allege that their race-based terminations violated their rights of Equal Protection. [*See* Doc. 1 ¶ 88]. In the factual allegations that were incorporated into the 🚩 § 1983 Count, [*see* Doc. 1 ¶ 87], Plaintiffs allege facts relevant to their terminations, by providing dates and the names of alleged decisionmakers as well as those employees the school district retained. [*See generally* Doc. 1 ¶¶ 7, 18-29, 44-86]. Based on the allegations, the Court cannot conclude that Plaintiffs failed to state constitutional violations or give sufficient notice of their 🚩 § 1983 claims based on violations of the Equal Protection Clause. *Cf.* 🚩 *Swierkiewicz*, 534 U.S. at 514 (holding that plaintiff stated Title VII national origin and Age Discrimination in Employment Act claims because the complaint alleged that plaintiff "had been terminated on account of his national origin ... and on account of his age" and "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination"). [6]

### b. Custom or Policy

**\*8** A plaintiff demonstrates that a custom or policy exists by identifying: (1) an officially promulgated policy; (2) an unofficial custom or practice shown through repeated acts of a final policy maker, 🚩⚠ *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc* ); or (3) an action by a decisionmaker who "possesses *final authority* to establish *municipal policy* with respect to the action ordered," 🚩 *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003) (quoting 🚩 *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ) (emphasis added in *Quinn* ). *See also* 🚩 *Denno v. Sch. Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (indicating that a governmental entity may be liable under 🚩 § 1983 if a constitutional violation stems from "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law").

Plaintiffs essentially admit that their complaint does not identify a policymaker. [*See* Doc. 22 at 9-10]. As a result, the Court determines whether Plaintiffs have sufficiently plead that there was an unofficial discriminatory practice or custom.

The Court concludes that Plaintiffs have not sufficiently stated a policy or custom to place Defendants on notice of the factual allegations on which they were basing their 🚩§ 1983 claims against the governmental entity. In paragraph 33 of Plaintiffs' complaint, they assert:

> All of Defendants' conduct described herein was accomplished pursuant to the official policy and custom of Fulton County Board of Education, or was committed or authorized by officials whose acts can be fairly deemed to be the actions of Fulton County Board of Education.

[Doc. 1 ¶ 33]. This is the only reference to Defendants' custom or policy in Plaintiffs' complaint. Defendants complain that this paragraph and the other portions of the complaint fails to identify sufficiently a policy or custom. [Doc. 15-2 at 8]. The Court agrees. First, paragraph 33 does not identify any policy or custom, but merely makes a conclusory allegation that some policy or custom exists. Without more specific factual allegations about the custom or policy, the school district cannot determine upon what grounds the 🚩§ 1983 claims rest. Despite the liberal pleading standard under FED. R. CIV. P. 8, courts have routinely dismissed complaints where a plaintiff makes only conclusory allegations about a policy or custom. *See* 🚩*Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (affirming dismissal of 🚩§ 1983 complaint because plaintiff failed to identify a custom or policy and only made conclusory allegations); 🔺*Greer v. Hillsborough County Sheriff's Office*, No. 8:06-cv-213, 2006 WL 2535050, at *3 n.5 (M.D. Fla. Aug. 31, 2006) (indicating that dismissal of *pro se* complaint would be appropriate where plaintiff failed to identify any departmental policy or custom that caused the constitutional deprivation); *Griffin v. City of Tampa*, No. 95-1403-CIV, 1996 WL 685838, at *6-7 (M.D. Fla. Nov. 22, 1996) (dismissing complaint because plaintiff only made a conclusory allegation that actions were based on a policy or custom). [7]

**\*9** Second, the Court finds that the allegations concerning disparate funding of schools does not identify a custom or policy of discrimination that lead to the Plaintiffs' terminations. The funding decision is not related to employment decisions. Thus, this funding policy, even if true, is of no assistance to Plaintiffs.

Finally, the Court is unpersuaded that the June 2003 unitary status agreement assists Plaintiffs in alleging a policy of discrimination. The agreement instead shows that the school district cannot engage in discrimination whatever discriminatory policies may have existed prior to June 2003. With only a conclusory assertion that a policy existed, Plaintiffs "have not nudged their [ 🚩§ 1983] claims [against the Fulton County School District] across the line from conceivable to plausible." 🚩*Twombly*, 127 S. Ct. at 1974.

### c. Causation/Moving Force

The Supreme Court has held that a governmental entity is liable under 🚩§ 1983 where "*deliberate* action attributable to the municipality itself is the "moving force" behind the plaintiff's deprivation of federal rights." 🚩*Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 399 (1997) (emphasis in original). In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." 🚩*Id.* at 404.

The Court concludes that because Plaintiffs have only made conclusory allegations concerning a policy or custom, Plaintiffs have not sufficiently alleged facts to demonstrate that a custom or policy caused the constitutional deprivations.

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITHOUT PREJUDICE**. Although Plaintiffs' complaint is inadequate as drafted to raise a 🚩§ 1983 claim against the school district, Plaintiffs' allegations suggest that they are not relying on *respondeat superior* to hold the school district liable. *See* 🚩*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (holding that a governmental entity cannot be held liable under the theory of *respondeat superior* ). As a result, the Court **RECOMMENDS** that Plaintiffs be permitted leave to amend their complaint to make non-conclusory allegations concerning a policy or custom. [8]

### *Individual Defendants' Motion to Dismiss, [Doc. 15-3]*

#### *A. Parties' Contentions*

Defendants first argue that to the extent that Plaintiffs raise Title VII claims against the individual Defendants, these claims must be dismissed because Title VII does not render individuals liable. [Doc. 15-3 at 3]. Defendants next argue that the 🚩 1983 claims against the individual Defendants must be dismissed for the following three reasons. First, Defendants argue that the individual Defendants are entitled to qualified immunity because Plaintiffs have insufficiently pled 🚩 § 1983 claims against individual Defendants. [*Id.* at 6]. Second, Defendants argue that the 🚩 § 1983 official capacity claims against the individual Defendants are redundant because the FCBE is also being sued. [*Id.* at 7]. Third, Defendants argue that Plaintiffs have not met the heightened pleading requirement set out in 🚩 *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998), which requires more detailed allegations when a court is confronted with qualified immunity. [*Id.* at 7-13]. Specifically, Defendants argue that Plaintiffs never alleged that Lovett, Wade, Rooks, or White acted with discriminatory intent. [*Id.* at 10]. Defendants also contend that Plaintiffs failed to mention any of the Defendants individually when raising their constitutional claims and, therefore, they did not connect the individual Defendants to any alleged constitutional violation. [*Id.* at 11-12]. Defendants further contend that Plaintiffs have merely drafted a shotgun pleading, which clearly does not meet the heightened pleading requirements for claims implicating qualified immunity. [*Id.* at 12-13].

**\*10** Defendants next argue that Plaintiffs claims for punitive damages should be dismissed because: (1) Title VII disavows punitive damages against governmental entities; (2) Plaintiffs have not sufficiently alleged 🚩 § 1983 claims against the individual Defendants; and (3) Plaintiffs have not alleged facts to demonstrate that the Defendants acted in reckless or callous disregard of rights. [*Id.* at 13-14]. Defendants finally argue that Plaintiffs are not entitled to injunctive relief because they have failed to plead any factual or legal basis to obtain such relief. [*Id.* at 14-15].

Plaintiffs first respond that the individual Defendants are not entitled to qualified immunity because: (1) they did not demonstrate that they were acting within the scope of their authority; (2) Plaintiffs have made allegations to demonstrate that Defendants violated constitutional rights; and (3) it is clearly established that racial discrimination is prohibited under the Fourteenth Amendment. [Doc. 21 at 3-6]. Plaintiffs next argue that they have met the heightened pleading requirements to raise 🚩 1983 claims against the individually named Defendants. [*Id.* at 6-8]. Plaintiffs contend that the individual members of the FCBE are liable because they direct, authorize, and are responsible for the actions about which Plaintiffs complain. [*Id.* at 8-9]. If Widener and Maddox were not members of the FCBE at the time of Plaintiffs' terminations, Plaintiffs do not oppose their dismissal. [*Id.* at 9 n.4]. Plaintiffs' argue that the individual Defendants were mentioned in the 🚩 § 1983 cause of action through Plaintiffs' use of "Defendants." [*Id.* at 10]. Plaintiffs further allege that their complaint is sufficient on its own, but that their proposed amended complaint addresses Defendants' concerns. [*Id.* at 9, 10]. Plaintiffs then distinguish the cases cited in Defendants' pleading. [*Id.* at 10-13].

Plaintiffs also contend that they have not sought to hold the individual Defendants liable under Title VII. They further argue that they have sufficiently pled allegations to demonstrate that they are entitled to punitive damages against the individual Defendants. [*Id.* at 13]. Finally, Plaintiffs assert that they are entitled to equitable relief such as back pay, front pay, and reinstatement, which is consistent with their use of the word "injunctive relief" because Title VII deems injunctive and equitable relief interchangeably. [*Id.* at 14-15].

Defendants reply that qualified immunity shields the individual Defendants from liability for the 🚩 § 1983 claims because: (1) Plaintiffs have not pled sufficient allegations to overcome qualified immunity, [Doc. 25 at 2-3]; (2) the allegations that the individual Defendants were acting pursuant to school district policy demonstrates that they were acting within their discretionary authority, [*id.* at 4-5]; and (3) the allegations do not meet the heightened pleading standard to hold Defendants Bernath, Bryant, Schultz, Reeves, Dean, Widener, Maddox, and Wilson liable, [*id.* at 6-8]. Defendants argue that Plaintiffs' allegations concerning disparate spending regarding students is unrelated to showing racial discrimination concerning employment practices. [*Id.* at 8-9]. Defendants finally argue that punitive damages are not available against the individual Defendants because the complaint barely mentions the individual Defendants and therefore Plaintiffs have not alleged facts to meet the punitive standard of reckless or callous disregard of rights. [*Id.* at 9-10].

*B. Discussion*

### 1. Title VII Claims

To the extent that Plaintiffs bring Title VII claims against Defendants in their individual capacities, Defendants seek dismissal of these claims. Plaintiffs assert that they are not bringing such claims. [Doc. 21 at 13]. Accordingly, the Court **RECOMMENDS** that Defendants motion to dismiss be **DENIED AS UNNECESSARY** concerning Title VII claims against individual Defendants in their individual capacities.

### 2. Official Capacity Claims

**\*11** As stated above, a suit against an individual in his official capacity is functionally equivalent to a suit against the entity to which the individual is an agent. *Payne, 414 F. Supp. 2d at 1179.* Thus "naming the individual defendants in their official capacities in a suit in which [the governmental entity] is also a named defendant is the equivalent of naming the same defendant repeatedly." *Id.*

The Court concludes that Plaintiffs' official capacity claims against the individual Defendants are not all due to be dismissed. Plaintiffs have named the wrong governmental entity. As a result, Plaintiffs' claims against the individual Defendants in their official capacities are not redundant based on Plaintiffs naming the FCBE as a Defendant. However, Plaintiffs' claims against twelve individuals in their official capacities who work for the same governmental entity are redundant insofar as each Plaintiff is essentially suing the governmental entity twelve times. As a result, the Court concludes that all official capacity claims except for one are due to be dismissed. Since Julia Bernath is the first individually named Defendant in her official capacity, the Court concludes that the claims against Bernath in her official capacity should not be dismissed but that the other official capacity claims are due to be dismissed as redundant.

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss **BE GRANTED WITH PREJUDICE IN PART AND DENIED WITHOUT PREJUDICE IN PART** [9] on Plaintiffs' official capacity claims against the individual Defendants. The District Court should dismiss all official capacity claims except for those against Defendant Bernath in her official capacity.

### 3. *Section 1983 Claims Against Individual Defendants*

The Eleventh Circuit imposes a heightened pleading standard in § 1983 cases involving individuals who can raise qualified immunity as a defense. [10] *See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004).* As a result, a "§ 1983 plaintiff [must] allege with some specificity the facts which make out [a § 1983] claim." *GJR Investments, Inc., 132 F.3d at 1367.* [11]

**\*12** Public officials are entitled to qualified immunity when governmental officials, acting within their discretionary authority, engage in conduct that does not violate clearly established statutory or constitutional rights about which a reasonable person would have known. *Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007).* First, the officials must demonstrate that they acted within the scope of their discretionary authority. *Id.* Next, the plaintiffs "must establish that the state of the law when the challenged events occurred was such that the defendant[s] had fair warning that [their] alleged treatment of the plaintiff[s] was unconstitutional." *Id.* This means that if a plaintiff wants to overcome a motion to dismiss based on qualified immunity, the plaintiff must allege facts sufficient to demonstrate that a violation of a constitutional right occurred in light of clearly established precedent. *Marsh v. Butler County, Ala., 268 F.3d 1014, 1028 (11th Cir. 2001)* (*en banc* ).

The Court concludes that Plaintiffs failed to allege sufficiently specific facts to meet the heightened pleading standard for § 1983 claims where qualified immunity arises. First, the Court rejects Plaintiffs' argument that Defendants failed to meet their burden of establishing that they behaved within their discretionary authority. The only way for Defendants to make this showing is through Plaintiffs' factual allegations because courts generally do not consider evidence outside of the complaint in considering a motion to dismiss. *See Garfield v. NDC Health Corp., 466 F.3d 1255, 1260 n.2 (11th Cir. 2006).* As a result, any failure of Defendants to demonstrate that they were not acting within the scope of their authority would appear to be the result of the non-specific

nature of Plaintiffs' complaint. The Court therefore will not deny the motion to dismiss on this basis. [12]

Second, the Court finds that Plaintiffs have not specifically alleged facts for the Court to determine which individual Defendants committed constitutional violations against which Plaintiffs. There are seven Plaintiffs in this case and twelve individual Defendants. Yet, the 🚩 § 1983 claims are contained in one count that encompasses three paragraphs. [Doc. 1 ¶¶ 87-89]. Such allegations cannot meet the heightened pleading standard for 🚩 § 1983 claims against individual Defendants because Count I does not allege relevant facts with any specificity.

The Court recognizes that Count I adopts all preceding paragraphs, including the factual assertions of each individual Plaintiff. Even referring to the factual allegations concerning individual Plaintiffs, the Court cannot determine which individual Defendants violated the individual Plaintiffs' constitutional rights. For example, Plaintiff Burnett alleges that Defendants Wade, Rooks, and White made the decision to terminate her at the direction of the FCBE while the FCBE retained a similarly situated white employee. [Doc. 1 ¶¶ 50-51]. Such allegations do not demonstrate a constitutional violation by the individual Defendants. At most, these allegations demonstrate that the FCBE's actions were discriminatory, which might implicate the individual members of the FCBE, but is silent as to whether Wade, Rooks, and White also acted discriminatorily since there is no indication that they were involved in the decision to retain the white comparator. Also, with a heightened pleading standard, the Court will not make the assumption that all individual members of the FCBE were responsible for firing Burnett and retaining the white comparator. As a result, the Court finds that the current pleadings, as exemplified by the problems with Plaintiff Burnett's allegations, are deficient under the heightened pleading standard. [13]

**\*13** Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITHOUT PREJUDICE** and that Plaintiffs are given an opportunity to replead their 🚩 § 1983 claims with sufficient specificity. [14]

*C. Relief Sought*

*1. Punitive Damages*

Under FED. R. CIV. P. 8, "a pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief the pleader seeks." FED. R. CIV. P. 8(a)(2), (3). Punitive damages are not available against governmental entities (or individuals named in their official capacities) under Title VII, *see* 🚩 42 U.S.C. § 1981a(b)(1); 🚩 *Garrett v. Clarke County Bd. of Edu.*, 857 F. Supp. 949, 953 (S.D. Ala. 1994), or under 🚩 § 1983, *see* 🚩 *Garrett*, 857 F. Supp. at 953. Punitive damages are available, however, against individuals under 🚩 § 1983 where " 'the defendant was motivated by an evil motive or intent,' or there was a 'reckless or callous indifference to [plaintiff's] federally protected rights.' " *See Brantley v. City of Macon*, 390 F. Supp. 2d 1314, 1332 (M.D. Ga. 2005) (quoting 🚩 *Anderson v. City of Atlanta*, 778 F.2d 678, 688 (11th Cir. 1985) ); *see also* 🚩 *Smith v. Wade*, 461 U.S. 30, 56 (1983).

The Court concludes that to the extent that Plaintiffs seek punitive damages against individual Defendants in their official capacities, *i.e.*, the school system, such a claim for relief cannot be granted. Punitive damages are not available against governmental entities under Title VII or 🚩 § 1983. *See* 🚩 *Garrett*, 857 F. Supp. at 953. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITH PREJUDICE** to the extent that Plaintiffs seek punitive damages against the school system.

The Court concludes that because Plaintiffs have not sufficiently pled 🚩 § 1983 claims against the individual Defendants, Plaintiffs have not pled sufficient facts to demonstrate that they are entitled to punitive damages against the individual Defendants. However, because Plaintiffs should be permitted to replead their 🚩 § 1983 claims against the individual Defendants, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITHOUT PREJUDICE** regarding Plaintiffs' attempts to seek punitive damages against the individual Defendants in their individual capacities.

*2. Injunctive Relief*

Plaintiffs indicate that their request for injunctive relief was a request for the equitable relief available under Title VII including back pay, front pay, and reinstatement, not a request for an injunction. [Doc. 21 at 14]. Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED WITH PREJUDICE** to the extent that Plaintiffs seek injunctive (as opposed to other equitable) relief. [15]

### Shotgun Nature of Plaintiffs' Complaint

**\*14** A shotgun pleading is one "that incorporate[s] every antecedent allegation by reference into each subsequent claim for relief." *Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273, 1279 (11th Cir. 2006).* Plaintiffs' complaint is clearly a shotgun complaint. For instance in Count I, the seven Plaintiffs have alleged § 1983 claims against all thirteen Defendants using only three paragraphs, one of which incorporates all allegations made prior to Count I. [*See* Doc. 1 ¶¶ 87-89]. As a result, Plaintiffs require the Court to sift through the allegations by each Plaintiff to determine which Defendants are liable under § 1983 for the termination of individual Plaintiffs, rendering the complaint a shotgun pleading. *See Magluta, 256 F.3d at 1284* (holding that plaintiff filed a shotgun complaint where fourteen defendants were charged in each count without making a distinction among the fourteen defendants charged); *cf. Ray v. Foltz, 370 F.3d 1079, 1083 n.2 (11th Cir. 2004)* (finding no shotgun pleading despite plaintiff alleging that defendants engaged in unconstitutional conduct without making distinctions among defendants because the complaint can be fairly read that all defendants are responsible for the alleged conduct).

The Eleventh Circuit has "condemned this sort of pleading on several occasions." *United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006).* These types of pleadings "wreak havoc on the judicial system." *Wagner, 464 F.3d at 1279* (quoting *Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001)* ). As a result, "[w]hen faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader." *Id.* If the District Court disagrees with the undersigned's analysis concerning Defendants' motion to dismiss, the undersigned **RECOMMENDS** that Plaintiffs be **DIRECTED TO REPLEAD** their complaint so that it is no longer in the form of a shotgun complaint.

### Motion to Amend Complaint, [Doc. 23]

#### A. Parties' Contentions

Plaintiffs seek leave to file an amended complaint. They first state that their amended complaint will name the proper entity to be sued such that Defendant FCBE will be replaced by the Fulton County School District ("FCSD") as a Defendant. [Doc. 23 at 3-4]. They next assert that they should be permitted to re-plead their § 1983 claims to address some of the concerns raised in Defendants' motion to dismiss. [*Id.* at 4-5]. Plaintiffs then assert that they should be permitted to amend their complaint to clarify the damages that they seek in their prayer for relief and to clarify that they seek equitable relief. [*Id.* at 5-6].

Defendants respond that although Plaintiffs would not ordinarily need leave to file the amended complaint because no responsive pleading has been filed, leave should not be granted in certain respects because the amended complaint would be futile. [Doc. 26 at 3]. First, Defendants assert that amendment of the complaint to reassert § 1983 claims against Defendants Widener and Maddox would be futile because they were not members of the FCBE at the relevant period. [*Id.* at 4-5]. Second, Defendants argue that amendment of the complaint to reassert § 1983 claims against Defendant Wilson and the individual FCBE members would be futile because the allegations against these individuals remains factually insufficient under the proposed amended complaint. [*Id.* at 5-7]. Regarding Defendant Wilson, Defendants contend that amendment would be futile because: (1) Plaintiffs only mention Wilson once in the entire amended complaint, rendering the allegations insufficient; and (2) Wilson is entitled to qualified immunity given that there is no allegation that he is acting outside the scope of his discretionary authority. [*Id.* at 6]. Regarding the individual FCBE members, Defendants argue that amending the complaint would be futile because: (1) the individuals are only mentioned once and there are no allegations that the individuals engaged in purposeful discrimination, which means that Plaintiffs have not set forth Equal Protection allegations and have not met the heightened pleading standard for § 1983 claims; and (2) these individuals are entitled to qualified immunity as there is no allegation that they acted outside of their discretionary authority. [*Id.* at 6-7].

**\*15** Second, Defendants argue that leave to amend should not be granted concerning punitive damages because

-25-

Plaintiffs have not made sufficient allegations against the individual defendants to show that they acted in reckless or callous disregard of Plaintiffs' rights. [*Id.* at 7-8]. Third, Defendants contend that amendment of the complaint to assert 🚩 § 1983 claims against the FCSD would be futile because Plaintiffs failed to sufficiently allege that the FCSD had a discriminatory policy or custom or that any policy or custom led to racial discrimination. [*Id.* at 8-9].

Fourth, Defendants argue that Plaintiffs should not be permitted to amend their complaint to reallege the 🚩 § 1983 claims against Defendants Wade, Rooks, White, and Lovett because amendment would be futile. [*Id.* at 9-10]. Specifically, Defendants claim that Plaintiffs never alleged that these individuals had the intent to discriminate and the allegations concerning the disparate funding and the percentage of African-American employees terminated in the RIF is not sufficient. [*Id.* at 10]. Finally, Defendants argue that Plaintiffs should not be permitted to amend their complaint to reallege official capacity claims against the individual Defendants because these claims are redundant in that Plaintiffs also sue the FCSD. [*Id.* at 11].

Plaintiffs reply that the Court should permit them leave to file an amended complaint for four reasons. First, they argue that the individual members of the FCBE are not entitled to qualified immunity because: (1) they have not shown that they were acting within the scope of their discretionary authority; (2) they committed a constitutional violation by implementing a RIF targeting African-American employees and then directing the termination of the Plaintiffs; and (3) such actions are clearly proscribed under federal law. [Doc. 27 at 4-7]. Second, Plaintiffs contend that their 🚩 § 1983 claims concerning the school district are sufficient, but if not, they welcome guidance from the Court as to how to more sufficiently allege their complaint. [*Id.* at 9-10]. Third, Plaintiffs contend that their 🚩 § 1983 claims against Wade, Rooks, White, and Lovett are not futile because they played a role in the allegedly discriminatory terminations of Plaintiffs. [*Id.* at 11-12]. Finally, Plaintiffs argue that they should be permitted to pursue punitive damages at this stage because they have alleged facts that would render punitive damages available. [*Id.* at 13-14].

*B. Discussion*

Under FED. R. CIV. P. 15(a), a party may amend its "pleading once as a matter of course at any time before a responsive pleading is served." A motion to dismiss does not constitute a responsive pleading for purposes of Rule 15(a), so a party can amend its complaint without leave of court following the filing of a motion to dismiss. 🚩 *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000). However, a court does not have to allow a party to amend a complaint even if no responsive pleading has been filed where the amendment would constitute a futile act. *See* 🚩 *id.* at 1284-86 (affirming district court's decision not to allow a party to amend his complaint where the amendment would be futile despite the absence of a responsive pleading).[16]

**\*16** The Court concludes that Plaintiff's motion for leave to amend should be granted, but that the amended complaint attached to the motion cannot be filed because the amendment would be futile. First, as discussed above in relation to Defendants' motion to dismiss, Plaintiffs' initial complaint is a shotgun complaint that must be remedied. Plaintiffs' proposed amended complaint does not fix the shotgun nature of the complaint in that the 🚩 § 1983 count encompasses multiple claims against multiple Defendants.

Second, the proposed amended complaint does not appear to meet the heightened pleading standard required for the 🚩 § 1983 claims against the individual Defendants. Count I of the proposed amended complaint asserts that Defendants Rooks, Wade, White, and Lovett at the instruction of the members of the FCBE selected the African-American Plaintiffs' for termination based on their race. [*See* Doc. 23-3 ¶ 89]. This allegation of race discrimination by itself is conclusory and therefore is insufficient to survive dismissal under the heightened pleading standard for 🚩 § 1983 qualified immunity claims.

Examination of the factual allegations for each Plaintiff does not assist Plaintiffs overcome the conclusory nature of the allegation. It does not appear that Plaintiffs have altered the substance of their factual allegations in their proposed amended complaint. As identified in the discussion of the motion to dismiss, Plaintiffs have not alleged specific facts for the Court to determine whether the individual Defendants have committed constitutional violations. For instance, Plaintiff Burnett contends in the proposed amended complaint that Wade, Rooks, and White at the direction of the school district (but not individual members of the school board or Defendant Wilson) terminated Burnett's employment.[17] [Doc. 23-3 ¶ 51]. Plaintiff Burnett, however, only alleges

that Jones, the white comparator, was retained by the school district without indicating that Wade, Rooks, and White were involved in this decision to retain the white comparator. As a result, the Court still cannot determine whether the individual defendants committed constitutional violations through racially discriminatory decisions. [18] Furthermore, the Court notes that if the school board directed Wade, Rooks, and White to terminate Plaintiff, it appears unlikely that Wade, Rooks, and White would be liable for acting discriminatorily if they acted by the direction of the board members. Therefore, the proposed amended complaint appears to be futile because its factual allegations still do not meet the heightened pleading standard required for § 1983 cases.

 **\*17** Third, the claims against the individual Defendants in their official capacities are futile as presented in the amended complaint because Plaintiffs have named the proper legal entity to be sued - - the FCSD. As stated above, a lawsuit against the governmental entity and agents of that entity in their official capacity are redundant. *See* Payne, 414 F. Supp. 2d at 1179. As a result, the proposed amended complaint would be futile by raising claims against the FCSD and the individual Defendants in their official capacities. [19]

Although the proposed amended complaint is futile for the above reasons, the Court finds, contrary to Defendants' argument, that Plaintiffs have remedied the problem concerning the § 1983 claim against the school district. In the proposed amended complaint, Plaintiffs state: "[t]he termination of these African American employees and those who associate with them is part of an official government policy or custom that discriminates against non-white students, employees, and those who associate with them." [Doc. 23-3 ¶ 8]. This allegation and the allegation that Defendants' conduct was pursuant to the official policy, [*id.* ¶ 34], provide notice that Plaintiffs allege that a policy of discrimination existed in the school district and that Defendants acted pursuant to this policy

in terminating Plaintiffs. Thus, Plaintiffs have alleged facts to give Defendants fair notice of the grounds upon which their § 1983 claims against the school district rest. To ask for more factual allegations would require Plaintiffs to meet a heightened pleading standard that the Supreme Court rejected in Leatherman, 507 U.S. at 168. Because the proposed amended complaint is deficient in the ways discussed above, the Court finds, however, that the proposed amended complaint cannot be filed.

Accordingly, the Court **RECOMMENDS** that Plaintiffs' motion for leave to file an amended complaint be **GRANTED** but that leave to file the proposed amended complaint attached to the motion be **DENIED**. Instead, the District Court should provide Plaintiffs a certain number of days to file an amended complaint that remedies the deficiencies of the initial complaint and the proposed amended complaint.

*Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion to dismiss, [Doc. 15], be **GRANTED IN PART AND DENIED IN PART**. Also, the undersigned **RECOMMENDS** that Plaintiffs' motion for leave to amend the complaint, [Doc. 23], be **GRANTED**, but that leave to file the proposed amended complaint be **DENIED**.

**IT IS SO RECOMMENDED,** this the 19th day of June, 2007.

_____

**ALAN J. BAVERMAN**

**UNITED STATES MAGISTRATE JUDGE**

**All Citations**

Not Reported in Fed. Supp., 2007 WL 9702284

**Footnotes**

1     Plaintiffs refer to the Fulton County School District as the Fulton County School System; however, the Court will refer to the system as the FCSD because it turns out that this is the proper legal name for the school system. [*See* Doc. 22 at 2-3].

2     In evaluating a motion to dismiss, the Court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *75 Acres, LLC v. Miami-Dade County, Fla.*, 338 F.3d 1288, 1293 (11th Cir. 2003). Also, any ambiguities are construed in the plaintiff's favor. *See* *Miccosukee Tribe of Indians of Fla. v. So. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).

3     The complaint actually indicates that Wade, Rooks, and White terminated Plaintiff McGuire, [*see* Doc. 1 ¶ 50], but because this portion of the complaint discusses Burnett, the Court concludes that this is a typographical error.

4     Recently, the Supreme Court held that *Conley*'s "no set of facts" language does not constitute a pleading standard. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). The Supreme Court did not question *Conley*'s requirement that the pleading give fair notice.

5     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc* ), the court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

6     Plaintiffs probably could have done a better job alleging facts to raise constitutional violations for Plaintiffs Michelle Williams, [Doc. 1 ¶¶ 85-86], and Gloria Parker, [*id.* ¶¶ 81-82]. However, since Defendants do not specifically object to the factual allegations made concerning Williams and Parker, [*see* Doc. 15-2 at 10-11], the Court will not recommend that the District Court take any action.

7     *See also Collins v. West Hartford Police Dep't*, 380 F. Supp. 2d 83, 91-92 (D. Conn. 2005) (dismissing claims against city where plaintiff failed to identify a policy or custom); *Gabriel v. Corrs. Corp. of Am.*, 211 F. Supp. 2d 132, 138-39 (D.D.C. 2002) (noting that it is insufficient to merely assert that municipality's agent was acting pursuant to a policy or custom); *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705-06 (S.D.N.Y. 1999) (citing motion to dismiss and for summary judgment cases for proposition that "[c]onclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support such an allegation"); *Copeland v. Northwestern Memorial Hosp.*, 984 F. Supp. 1182, 1185 (N.D. Ill. 1997) (dismissing § 1983 claim because plaintiff failed to allege sufficiently a policy or custom); *cf. Stewart v. Bd. of Comm'rs for Shawnee County, Kansas*, 216 F.R.D. 662, 665-66 (D. Kan. 2003) (denying motion to dismiss because plaintiffs allegations showed that constitutional violation resulting from a certain official policy or custom).

8     Alternatively, as discussed below, the District Court may choose to order Plaintiffs to file a more definite statement without dismissing the complaint. *See* *Magluta v. Samples*, 256 F.3d 1282, 1284-85 (11th Cir. 2001) (vacating dismissal and remanding for repleading).

9     Since Plaintiffs indicate in their proposed amended complaint that they seek to add the Fulton County School District as a party, Defendants should be permitted to raise their argument that it is redundant to sue Bernath in her official capacity as well as the school district if Plaintiffs persist in pursuing official capacity claims against Bernath.

10   Some judges on the Eleventh Circuit and other district courts in this Circuit have observed that the heightened pleading standard is inconsistent with the Rule 8 pleading standard. *See* *Marsh*, 268 F.3d at 1060 n.1 (Barkett, J., concurring in part and dissenting in part); *Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1282 n.31 (M.D. Ala. 2004) (noting that "many other circuit courts have noted that a heightened pleading standard for § 1983 cases is in tension with the Federal Rules of Civil Procedure ... and also with the Supreme Court cases").

11   The Eleventh Circuit has described that heightened pleading standard in civil rights cases as follows:

> The complaint must allege the relevant facts with some specificity. More than mere conclusory notice pleading is required. A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. Moreover, in reviewing a motion to dismiss, we need only accept well-pleaded facts and reasonable inferences drawn from those facts. Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal. We must also keep in mind the fact that we generally accord official conduct a presumption of legitimacy.

*Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citations and internal punctuation omitted).

12   The Court further notes that Plaintiffs alleged that certain individual Defendants were responsible for the termination decisions. There are no corresponding allegations that these individual Defendants were acting outside the scope of their authority when they undertook these termination decisions. As a result, Plaintiffs' complaint does not allege facts demonstrating that Defendants acted outside the scope of their discretionary authority.

13   The Court also notes that Plaintiffs' § 1983 claims do not appear to follow FED. R. CIV. P. 10(b), which states that "[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth." Here, a separation of claims is desirable given the number of parties involved in the lawsuit and the apparent fact that not every Defendant is responsible for each Plaintiffs' termination.

14   The Court has no basis to dismiss Widener and Maddox with prejudice at this time because the factual allegations of the complaint suggest that Widener and Maddox were members of the FCBE during the relevant time period. If it turns out that these two Defendants were not members of the FCBE at the relevant time, Plaintiffs should drop them pursuant to FED. R. CIV. P. 21.

15   The Court notes that Plaintiffs' Title VII race discrimination claims and the Title VII retaliation claims of Plaintiffs Hertwig, McGuire, and Burnett still remain even if the District Court ultimately decides to grant Defendants' motion to dismiss with prejudice.

16   Plaintiffs argue that Defendants' opposition to the motion to amend is moot because they can file an amended complaint as a matter of course. [Doc. 27 at 14]. The Court notes that the Eleventh Circuit's *Brewer-Giorgio* decision still permits a district court to address whether an amended complaint is futile even in the absence of a responsive pleading. *Brewer-Giorgio*, 216 F.3d at 1284-86. As a result, the Court concludes that Defendants' opposition is not moot.

17   In the interests of time and space, the Court will not discuss the deficiencies of each Plaintiffs' allegations against the individual Defendants. Instead, the Court highlights problems regarding Plaintiff Burnett's claims to demonstrate the types of concerns that the Court has with Plaintiffs' proposed amended complaint. Although this Court only highlights the deficiencies of Burnett's claims against certain individual Defendants, Plaintiffs

should address Defendants' concerns about the specificity of the ⚑ [§ 1983](#) claims against the individual Defendants.

18    The Court further notes that, contrary to the allegation in Count I of the proposed amended complaint, there are no factual allegations that Defendant Lovett was involved in Burnett's termination in the proposed amended complaint. To give fair notice of their claims, Plaintiffs must clarify which Defendants were involved in the decision to terminate each individual Plaintiff.

19    Because the Court finds that the proposed amended complaint is futile in certain regards concerning the individual Defendants, the Court will not address Defendants' arguments concerning the propriety of naming Widener and Maddox as Defendants or the sufficiency of the allegations for punitive damages. The Court notes, however, that if Defendants Widener and Maddox were not members of the FCBE during the relevant time, then they should not be named as Defendants in this case.

---

**End of Document** <span style="float:right">© 2022 Thomson Reuters. No claim to original U.S. Government Works.</span>

2005 WL 2031108
Only the Westlaw citation is currently available.
United States District Court,
M.D. Georgia, Albany Division.

Robert Lee WASHINGTON, Plaintiff,

v.

VETERANS OF FOREIGN WARS OF THE
UNITED STATES and Veterans of Foreign
Wars Barr-Allen Post # 2785, Inc., Defendants.

No. 1:04-CV-137(WLS).
|
Aug. 19, 2005.

*ORDER*

SANDS, Chief J.

**\*1** Presently pending before the Court is Defendant Veterans of Foreign Wars of the United States' (hereinafter "VFW" or the "National") motion to dismiss. (Tab 18). Plaintiff is proceeding *pro se* and the Court notified Plaintiff of the necessity of responding to the motion. (Tab 19). Plaintiff has previously amended his complaint at the direction of the Court. (Tabs 7, 9). Plaintiff has also filed a response to VFW's motion to dismiss. (Tab 21). For the following reasons, Defendant's motion to dismiss Plaintiff's complaint against it (Tab 18) is GRANTED.

Plaintiff files a claim against the National organization and the local chapter for race discrimination. Plaintiff alleges violations of the 14 th Amendment, Title VII and arguably Title VI. (Tabs 2, 9). Defendant argues that as a matter of law none of Plaintiff's allegations can violate the 14 th Amendment, Title VII or arguably Title VI.

The Court notes that a motion to dismiss should not be granted unless it is clear from the pleadings that the plaintiff can prove no set of facts that would support his claim for relief. *Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1369 (11 th Cir.1997). Such motions are viewed with disfavor and rarely granted. *Brooks,* 116 F.3d at 1369. This Court is required to accept well pled allegations as true and is required to draw all inferences in favor of the Plaintiff.

A claim for racial discrimination made pursuant to Title VII requires that the Plaintiff have some type of employment relationship with Defendant. 42 U.S.C. §§ 2000e(b), 2000e-2(a); *Llampallas v. Mini-Circuits, Inc.,* 163 F.3d 1236 (11 th Cir.1998). Plaintiff admits in his complaint, amended complaint, and response to the motion to dismiss that he is not an employee of the Defendant. (Tabs 2, 9, 21). Therefore, even if Defendant's actions were racially discriminatory, Plaintiff cannot obtain relief under Title VII because no employer/employee relationships exists between Plaintiff and Defendant. Accordingly, Defendant VFW's motion to dismiss the Title VII claim (Tab 18) is GRANTED.

Plaintiff also makes a claim for racial discrimination in violation of the 14 th Amendment. In order to make a claim under the 14 th Amendment, a plaintiff must show some state action on behalf the Defendant. *Foxy Lady, Inc. v. City of Atlanta,* 347 F.3d 1232 (11 th Cir.2003). Plaintiff has not made any allegation or shown any state action on behalf of Defendant VFW that relates to Plaintiff. Even if Defendant's actions were racially discriminatory, without state action, Plaintiff cannot obtain relief under the 14 th Amendment as alleged. Therefore, Defendant VFW's motion to dismiss the 14 th Amendment claim (Tab 18) is GRANTED.

Lastly, Plaintiff arguably makes a claim for racial discrimination under Title VI. In order to recover for a violation of Title VI, a plaintiff must show that Defendant received federal funds. 42 U.S.C.2000d; *Shotz v. City of Plantation,* 344 F.3d 1161 (11 th Cir.2003). Plaintiff has not made any allegation or made a showing that Defendant VFW receives any federal funding. Even if Defendant's actions were racially discriminatory, without the showing or allegation that VFW received federal funds, a claim under Title VI is barred as a matter of law. Therefore, Defendant VFW's motion to dismiss the Title VI claim (Tab 18) is GRANTED.

**\*2** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2031108

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 988362
Only the Westlaw citation is currently available.
United States District Court, M.D.
Alabama, Northern Division.

**F.V.**, a minor suing BY AND THROUGH his
natural Mother and next friend Amber **VARGAS**,
and Amber **Vargas**, individually, Plaintiffs,

v.

**RANDOLPH** COUNTY BOARD OF **EDUCATION**;
Jeremiah Marquis Thomas; Jimmie Fryer; B.P., a
minor, by and through his father and next friend,
Chris Allen Pettit; and D.S., a minor, by and through
his father and next friend, Darrell Sims, Defendants.

CASE NO. 2:20-CV-142-WKW
|
Signed 03/31/2022

**Attorneys and Law Firms**

Douglas Jaye Fees, The Cochran Firm, Huntsville, AL, for
Plaintiffs.

Anne Regina Yuengert, Thomas Lee Oliver, III, Bradley
Arant Boult Cummings LLP, Birmingham, AL, for Defendant
**Randolph** County Board of **Education**.

Allison Alford Ingram, John Warren Marsh, Ball, Ball,
Matthews & Novak, P.A., Montgomery, AL, for Defendants
Jeremiah Marquis Thomas, Jimmie Fryer.

Carl Robert Gottlieb, Jr., C. Robert Gottlieb, Jr., PC, Mobile,
AL, for Defendants A Minor, Chris Allen Pettit.

D.S., Wedowee, AL, Pro Se.

Darrell Sims, Wedowee, AL, Pro Se.

**MEMORANDUM OPINION AND ORDER**

W. Keith Watkins, UNITED STATES DISTRICT JUDGE

**\*1** A third-grade student, **F.V.**, was attacked on the
playground at school by two of his classmates. His mother
has sued the principal, the teacher, and the school board under
federal and state law for failing to protect her son from the
recurrent bullying by these fellow students. Before the court
are the motions to dismiss filed by (1) the **Randolph** County

Board of **Education** (Doc. # 68) and (2) the principal and
teacher (Jimmie Fryer and Jeremiah Marquis Thomas) (Doc.
# 67). The motions are fully briefed. (Docs. # 72–73, 77–78.)
The board of **education's** motion is due to be granted in part
and denied in part, and the school officials' motion is due to
be granted.

**I. JURISDICTION AND VENUE**

Subject matter jurisdiction over the federal law claims
is proper under 28 U.S.C. §§ 1331 (federal question),
1343 (civil rights jurisdiction), 1441 and 1446(b)(3)
(removal jurisdiction). Subject matter jurisdiction over the
supplemental state law claims is lacking based on state
sovereign immunity. Personal jurisdiction and venue are not
contested.

**II. STANDARD OF REVIEW**

**A. Rule 12(b)(6)**
When evaluating a motion to dismiss pursuant to Rule 12(b)
(6), the court "accept[s] as true the facts alleged in the
complaint, drawing all reasonable inferences in the plaintiff's
favor." *Est. of Cummings v. Davenport*, 906 F.3d 934,
937 (11th Cir. 2018) (alteration adopted). To survive Rule
12(b)(6) scrutiny, "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.* (citation omitted). The well-
pleaded factual allegations in the complaint, but not its legal
conclusions, are presumed true. *Id.*

**B. Rule 12(b)(1)**
A motion to dismiss under Rule 12(b)(1) challenges the
court's subject-matter jurisdiction. *McElmurray v. Consol.
Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251
(11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court
evaluates whether the complaint "sufficiently allege[s] a
basis of subject-matter jurisdiction," employing standards
similar to those governing Rule 12(b)(6) review. *Houston*

*v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

### III. BACKGROUND

**A. The Parties**

Plaintiff **F.V.**, who is of Hispanic heritage, and his classmates Defendants B.P. and D.S., attended Wedowee Elementary School during the academic years 2017–18 and 2018–19. Plaintiff Amber **Vargas** is **F.V.**'s mother. Defendant Jeremiah Marquis Thomas was the physical **education** teacher, who worked under the supervision of the principal, Defendant Jimmie Fryer. Defendant **Randolph** County Board of **Education** (RCBOE) manages and controls the **Randolph** County School System, which includes Wedowee Elementary School. (Docs. # 65, ¶¶ 1–7 (3d Am. Compl.).)

**B. The August 30, 2018 Playground Incident**

*2 On August 30, 2018, third-grade boys, **F.V.**, B.P., and D.S., were on the playground during their physical **education** class. Defendant B.P. wanted Plaintiff **F.V.**'s Beyblade toy. When Plaintiff **F.V.** refused to give B.P. the toy, B.P. "slammed **F.V.** into a piece of metal, causing Plaintiff **F.V.** to fall to the ground and pass out." (Doc. # 65, ¶ 11.) Defendants B.P. and D.S. "proceeded to stomp on Plaintiff **F.V.** while he was on the ground." (Doc. # 65, ¶ 11.)

The physical **education** teacher, Mr. Thomas, was at the playground, but he "was on his phone and was not paying attention to the students" at the time of the attack. (Doc. # 65, ¶ 65.) After the attack, Plaintiff **F.V.** was "sent ... to the school nurse." (Doc. # 65, ¶ 16.) No school official notified Plaintiff **F.V.**'s mother that day that her son had been beaten up and lost consciousness. (Doc. # 65, ¶¶ 16, 60.)

When Ms. **Vargas** picked up her son from school that day, he was bruised and scratched. He also was "confused enough that he was unable to say what day of the week it was or remember what day of the week it was seconds after being told." (Doc. # 65, ¶ 16.) Ms. **Vargas** reported the incident to Principal Fryer. He suspended B.P. and D.S. for two days, but the suspension did not stop the bullying. (Doc. # 65, ¶ 17.)

**C. The September 5, 2018 Incident**

On September 5, 2018, Plaintiff **F.V.** returned to school. He was confronted by Defendants B.P. and D.S., who were not being supervised. Either B.P. or D.S. "threatened to kill" **F.V.**,

stating "that if he couldn't do it with his hands, he would use a knife." (Doc. # 65, ¶ 12.) After this threat, **F.V.** was unable to return to school "for some time, both because his doctors advised against it and because he and [his mother] were afraid for his life." (Doc. # 65, ¶ 15.)

**D. Prior Incidents of Bullying**

From late 2017 until the attack on August 30, 2018, Defendants B.P. and/or D.S. "bullied" Plaintiff **F.V.** at school and on the school bus. (Doc. # 65, ¶¶ 14, 39, 46.) "[O]ne basis of the harassment was that **F.V.** is Hispanic." (Doc. # 65, ¶ 46.)

Principal Fryer, Mr. Thomas, and the RCBOE "had actual and/or constructive knowledge of B.P.'s and/or D.S.'s continuing practice of bullying **F.V.**" (Doc. # 46, at ¶ 14.)

**E. Plaintiff F.V.'s Injuries**

As a result of the attack on August 30, 2018, Plaintiff **F.V.** suffered a concussion, internal bruising, and abrasions. He also has endured suicidal thoughts and post-traumatic stress disorder. (Doc. # 65, ¶ 13.)

**F. The Claims**

Defendants are named in five of the eight counts in the governing Third Amended Complaint. Plaintiffs bring two federal law claims against Defendants, alleging a hostile **educational** environment under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et seq.*, and a violation of substantive due process under the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

Plaintiffs also bring two Alabama tort claims against Defendants: negligence and wantonness *per se* (Count IV) and a breach of a duty to supervise (Count VII). Ms. **Vargas** also asserts a derivative claim under Alabama law against Defendants for the loss of services of her child (Count VIII). Plaintiffs seek compensatory and punitive damages.

### IV. DISCUSSION

**A. The Randolph County Board of Education's Motion to Dismiss**

The RCBOE urges dismissal of each count against it. The arguments are addressed in turn.

**1. *State Law Claims (Counts IV, VII, and VIII): Article I, Section 14 Immunity Under the Alabama Constitution***

**\*3** The RCBOE argues that it has immunity under Article I, Section 14 of the Alabama Constitution on the state law claims in Counts IV, VII, and VIII.

"[T]he State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const., Art. I, § 14. "Section 14 immunity is more than a defense; when applicable, it divests the trial courts of this State of subject-matter jurisdiction." *Alabama State Univ. v. Danley*, 212 So. 3d 112, 127 (Ala. 2016).

Under Alabama law, "[c]ounty boards of **education** are State agencies for purposes of State immunity." *Ex parte Wilcox Cnty. **Bd.** of **Educ.***, 285 So. 3d 765, 775 (Ala. 2019). "Because county boards of **education** are local agencies of the State, they are clothed in constitutional immunity from suit...." *Id.* (citations and quotation marks omitted); *see also Ex parte Phenix City **Bd.** of **Educ.***, 109 So. 3d 631, 632 (Ala. 2012) (holding that state agencies "have absolute immunity from *suit*, not simply immunity from certain *claims*." (citation and quotation marks omitted)).

The foregoing authority leads to the clear conclusion that RCBOE has absolute immunity for state law claims. Plaintiffs' arguments in rebuttal are not responsive to and do not address absolute immunity. (*See* Doc. # 73, at 6–12.) Accordingly, RCBOE's motion to dismiss Counts IV, VII, and VIII is due to be granted.

**2. *Title VI Hostile **Educational** Environment Claim (Count V)***

The RCBOE contends that Count V is subject to dismissal because "[n]either the Supreme Court [n]or the Eleventh Circuit ha[s] allowed a plaintiff to assert a Title VI hostile **educational** environment claim for student-on-student harassment." (Doc. # 68, at 5–6.) Alternatively, the RCBOE contends that, "if such a cause of action exists," Plaintiffs have failed to allege plausibly that it "was 'deliberately indifferent' to the harassment." (Doc. # 68, at 6–7.) For its alternative argument, the RCBOE relies principally on *Stinson ex rel. K.R. v. Montgomery County Board of Education*, 365 F. Supp. 3d 1233 (M.D. Ala. 2019). (Doc. # 68, at 7–8.)

These arguments need not detain the court long. First, to clarify the RCBOE's argument, the RCBOE does not cite a binding decision that affirmatively holds that Title VI precludes a claim premised on a racially hostile environment arising from student-on-student harassment. That issue, as the RCBOE concedes, has not been decided yet in this circuit. [1] The RCBOE asks for a ruling in its favor based on the absence of authority in this circuit. The court declines to decide an issue of first impression on such a threadbare argument.

Second, Defendants rely on *Stinson*, a Title IX case, presumably because "Title IX was patterned after Title VI of the Civil Rights Act of 1964." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979). However, their reliance on the district court's opinion in *Stinson* no longer has force because the Eleventh Circuit since has reversed and remanded the judgment. *See Stinson ex rel. K.R. v. Maye*, 824 F. App'x 849, 858–59 (11th Cir. 2020) (holding that the complaint plausibly alleged that the county board of **education** was deliberately indifferent to student-on-student sexual harassment and discrimination under Title IX).

**\*4** In sum, the RCBOE's arguments encompass insufficient authority and analysis to warrant Count VI's dismissal at this stage of the proceedings.

**3. *Fourteenth Amendment Substantive Due Process Claim (Count VI)***

The RCBOE argues that Plaintiffs' Fourteenth Amendment substantive due process claim fails as a matter of law because Plaintiffs have not alleged that it "engaged in any conduct that shocks the conscience." (Doc. # 68, at 10.) Plaintiffs argue, and allege, that the RCBOE engaged in conscience-shocking conduct by failing to prevent known bullying by Defendants B.P. and D.S. against Plaintiff **F.V.** (Doc. # 73, at 26.) The allegations do not rise to the level of conscience shocking.

"[T]o prevail on a § 1983 claim against a local government entity, a plaintiff must prove both that her harm was caused by a constitutional violation and that the government entity is responsible for that violation." *Wyke v. Polk Cnty. Sch. **Bd.***, 129 F.3d 560, 568 (11th Cir. 1997). A government entity can be held liable under § 1983 only

if its " 'policy' was responsible for its employee's violation of the plaintiff's constitutional rights." *Id.* If there is no underlying constitutional violation by the employee, there is no basis to hold the government entity liable for its policy. *See* 🚩 *id.* at 569 ("[A] government entity's custom or policy is relevant only when a constitutional deprivation has occurred." (citation and quotation marks omitted)). It is appropriate then to initially address whether the RCBOE's principal or teacher violated **F.V.**'s substantive due process rights before examining any policy. [2]

"As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.' " 🚩 *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002). "This standard is narrowly interpreted and applied." 🚩 *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) (citation and quotation marks omitted). And the standard is exacting to prevent "the Fourteenth Amendment from becoming a surrogate for conventional tort principles." 🚩 *Nix*, 311 F.3d at 1376. Where no custodial relationship exists, as in the school setting, "courts have not allowed [substantive] due-process liability for deliberate indifference" and have "allow[ed] recovery for intentional conduct under limited circumstances." [3] 🚩 *Nix*, 311 F.3d at 1378 (alterations added); 🚩 *Hernandez*, 982 F.3d at 1331 ("No case in the Supreme Court, or in this Circuit, ... has held that ... deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context.").

**\*5** The Eleventh Circuit has recognized a "shock the conscience" basis of liability only for "intentional, obviously excessive corporal punishment" and only in two published decisions. 🚩 *Hernandez*, 982 F.3d at 1331 (citing 🚩 *Neal ex rel. Neal v. Fulton Cnty.* ***Bd.*** *of* ***Educ***, 229 F.3d 1069 (11th Cir. 2000), and 🚩 *Kirkland ex rel. Jones v. Greene Cnty.* ***Bd.*** *of* ***Educ.***, 347 F.3d 903 (11th Cir. 2003)). In *Neal*, "the coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student," 🚩 229 F.3d at 1071, and in *Kirkland*, a high school principal "struck the student with a metal cane in the head,

ribs, and back for disciplinary reasons," 🚩 347 F.3d at 904–05. *See* 🚩 *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009).

Both *Neal* and *Kirkland* involved direct, intentional physical abuse by a state actor. Here, Plaintiffs allege that Thomas created the danger that led to B.P.'s and D.S.'s attack on **F.V.** in August 2018 because he was on his phone and was not paying attention to the students on the playground. Plaintiffs also allege that Thomas and Fryer permitted the three students to be in "close proximity" without supervision, even though they knew about the past bullying and the playground attack. (Doc. # 65, at ¶¶ 12, 65, 56–59, 65.) Plaintiffs do not allege that Thomas or Fryer engaged in intentional acts of physical abuse against **F.V.**. Rather, the perpetrators of the physical abuse were **F.V.**'s classmates. Hence, Thomas and Fryer's alleged actions are distinguishable from the sort of intentional and excessive corporal punishments inflicted by the school officials in *Neal* and *Kirkland*.

Plaintiffs have cited no authority that warrants an extension of the shocks-the-conscience standard to the facts of this case involving a third party's violence against a classmate that was not directed or sanctioned by a school official. Plaintiffs argue that "this case is a prime example of" deliberate indifference that rises to the level of conscious shocking, but they point to no decision with even remotely analogous facts. (*See* Doc. # 73, at 26.) The allegations that Thomas and Fryer failed to prevent the bullying, attack, and death threat Plaintiff **F.V.** suffered, even if that failure is unacceptable, does not shock the conscience in a constitutional sense under the rigorous Eleventh Circuit standard. The allegations demonstrate at best deliberate difference, not conduct "intended to injure in some way unjustifiable by any government interest." 🚩 *Davis*, 555 F.3d at 982.

Because Plaintiffs have failed to allege a plausible substantive due process violation by either the principal or the teacher, Plaintiffs' claim against the RCBOE necessarily fails. Accordingly, the RCBOE's motion to dismiss Count VI is due to be granted.

**B. Defendants Jeremiah Thomas and Jimmie Fryer's Motion to Dismiss**

Defendants Thomas and Fryer (collectively, "individual Defendants") also urge dismissal of each count against them. The arguments are addressed in turn.

**1.** *State Law Claims (Counts IV, VII, and VIII):* Article I, Section 14 *Immunity Under the Alabama Constitution*
The individual Defendants argue that in their official capacities, they are entitled to sovereign immunity under Article I, Section 14 of the Alabama Constitution on the state law claims in Counts IV, VII, and VIII. (Doc. # 67, at 7–8.) Plaintiffs refute that they bring official capacity claims in the Third Amended Complaint. They contend that they have sued Thomas and Fryer only in their individual capacities for monetary damages based on their roles as state agents. (Doc. # 72, at 14, 25.) The individual Defendants reply that any individual capacity claims are "in actuality" official capacity claims because Defendants' actions encompass only "alleged acts or omissions performed in furtherance of Defendants' duties as employees of the RCBOE." (Doc. # 77, at 6.) Hence, they argue that based on the nature of the claims, they still are entitled to sovereign immunity. (Doc. # 77, at 4–7.) The individual Defendants have the correct argument.

**\*6** The Alabama Supreme Court "has noted the general rule that the State immunity provided by § 14 'cannot be circumvented by suing the [State] official or agent individually....' " *Barnhart v. Ingalls*, 275 So. 3d 1112, 1125 (Ala. 2018) (quoting *Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978)) (alteration in original). This general rule, however, is not without exceptions: State absolute immunity does not apply to " 'actions for damages brought against State officials in their individual capacity where it is alleged that they acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, *subject to the limitation that the action not be, in effect, one against the State.' " Id.* (quoting *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013)) (emphasis added). To determine "whether an action against a state officer or employee is, in fact, one against the State, a court will consider such factors as the nature of the action and the relief sought." *Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004) (cleaned up).

*Barnhart* is helpful for resolving the state sovereign immunity issue in this case. In *Barnhart*, the plaintiffs—former employees of the Space Science Exhibit Commission—brought a putative class action against the Commission's officers alleging "negligence/wantonness and breach-of-fiduciary-duty claims against the Commission officers in their individual capacities." 275 So. 3d at 1118. On the negligence claim, the plaintiffs alleged that "the Commission officers 'owed a duty to Commission employees

to compensate them in accordance with Alabama law....' " *Id.* at 1126 (alterations adopted). As for their breach-of-fiduciary-duty claim, the plaintiffs alleged that "the Commission officers 'owed a fiduciary duty to Commission employees to act at all times with utmost care, honesty, loyalty, and fidelity in all of the Commission's actions.' " *Id.* (alterations adopted). The officers argued "that they [were] entitled to State immunity with regard to the individual-capacities claims," which" sought money damages from them personally." *Id.* at 1125.

The Alabama Supreme Court noted that at first glance it did not appear that State absolute immunity barred the plaintiffs' claims because they were "seeking personal payment from the Commission officers for tortious misconduct alleged in the individual-capacities claims—and that such a judgment would therefore have no effect on the State treasury...." *Id.* at 1126. It recognized its prior cases that had focused only on the source of a damages award in determining whether a claim was, "in effect, one against the State." *Id.* In *Barnhart*, the court held that "regardless of the damages being sought, the nature of those claims requires [it] to hold otherwise." *Id.* (emphasis in original). "[T]he individual-capacities claims [were], in effect, claims against the State that [were] barred by § 14." *Id.* (alterations added).

The court reasoned that a "necessary element" of the negligence claim and the breach-of-fiduciary-duty claim was "whether, in their individual capacities, the Commission officers owed a duty to the [plaintiffs]." *Id.* (alteration added). And given how the plaintiffs had alleged those claims, the court determined that "the duties allegedly breached by the Commission officers were owed to the [plaintiffs] only because of the positions the Commission officers held and that the Commission officers were, accordingly, acting only in their official capacities when they allegedly breached those duties...." *Id.* (emphasis in original) (alteration added).

*Barnhart* requires the same outcome in this case. Plaintiffs seek monetary damages for F.V.'s injuries, not equitable relief. A request for monetary relief can signal an individual capacity suit to which state sovereign immunity does not apply. But as *Barnhart* establishes, that is not always the case under Alabama law. The nature of the action can establish to the contrary, which it does here.

**\*7** The state law claims Plaintiffs bring against the individual Defendants include claims for negligence *per se*,

wantonness *per se*, and a breach of a duty to supervise. [4] Each of these claims incorporates an element of duty and, thus, raises the issue of whether the individual Defendants owed a duty to **F.V.** in their personal capacities. [5] *See, e.g., Allen Trucking Co. v. Blakely Peanut Co.*, 340 So. 2d 452, 454 (Ala. Civ. App. 1976) (observing that for a negligence *per se* claim, "if the statute created no duty to plaintiff, a violation thereof could not be negligence per se").

For each claim, Plaintiffs allege that two Alabama statutes establish the duty. In Count IV, Plaintiffs allege that Thomas and Fryer "owed a duty to Plaintiff **F.V.** under" the Safe at Schools Act, Ala. Code § 16-30A-1, *et seq.*, and under the Jamari Terrell Williams Student Bullying Prevention Act, *see* Ala. Code § 16-28B-1, "to implement policies and procedures to prevent bullying." [6] (Doc. # 65, ¶ 37.) Plaintiffs further allege that Thomas and Fryer breached the duty they owed **F.V.** by failing "to implement policies and procedures to prevent bullying, even after bullying on their premises and/or under their supervision resulted in life-threatening physical injuries" to **F.V.** (Doc. # 65, at ¶ 40.) In Count VII, Plaintiffs allege that Thomas and Fryer had "a duty to supervise the students so as to prevent bullying" and that "the duty to prevent bullying is closely ... regulated" by the Safe at Schools Act and by the Jamari Terrell Williams Student Bullying Prevention Act. (Doc. # 65, ¶ 64; *see also* Doc. # 72, at 18 ("Plaintiffs have cited several statutes in this case because they are relevant to the recognition by the Legislature of a governmental duty to protect students from bullying and similar hazards in the **educational** setting.").)

As pleaded, Thomas's and Fryer's duties stem from two state statutes imposing duties on Alabama's public schools. Thomas and Fryer had no duties outside of their employment to comply with the Safe at Schools Act or with the Jamari Terrell Williams Student Bullying Prevention Act; "rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State." *Barnhart*, 275 So. 3d at 1127. In other words, the statutory duties allegedly breached were owed to Plaintiff **F.V.** only because of the positions Thomas and Fryer held as principal and teacher. They were accordingly "acting only in their official capacities when they allegedly breached those duties" *Id.* at 1126.

All the Alabama decisions upon which Plaintiffs rely predate the *Barnhart* decision. (Doc. # 72, at 6–16.) Plaintiffs have

not mentioned or offered any argument for distinguishing *Barnhart*.

**\*8** Accordingly, for the same reasons discussed in Part IV.A.1., Fryer and Thomas are entitled to immunity under Article I, Section 14 of the Alabama Constitution, on the state law claims in Counts IV, VII, and VIII. Counts IV, VII, and VIII against the individual Defendants are due to be dismissed.

### *2. Title VI Hostile* **Educational** *Environment Claim (Count IV)*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).

The individual Defendants argue that only the grant recipients of federal funding can be held liable under Title VI and that individuals working for a school system are not the grant recipients. (Doc. # 67, at 12.) They contend that as a matter of law the Title VI claim must be dismissed against them.

Binding precedent is on their side. The Eleventh Circuit has held that "[i]t is beyond question ... that individuals are not liable under Title VI." *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003). To "license individual liability for violations of Title VI," the *Shotz* court explained, would exceed the "allowed scope of government enforcement action under the statute." *Id.* at 1170. Also, "[b]y limiting coverage to recipients, Congress imposes the obligations of [Title VI] upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." *Id.*

Plaintiffs' unsupported argument suggesting that the Title VI claim should proceed against Fryer and Thomas because they acted as agents for the school cannot overcome the clear command of *Shotz*. (Doc. # 72, at 23.) Accordingly, the individual Defendants' motion to dismiss the Title VI claim is due to be granted.

### *3. Fourteenth Amendment Substantive Due Process Claim (Count VI)*

Thomas and Fryer, like the RCBOE, move to dismiss the substantive due process claim on grounds that the alleged conduct is not conscience shocking. For the reasons articulated in Part IV.A.3, they are correct. Because Plaintiffs have not alleged a cognizable substantive due process violation against Thomas and Fryer, their motion to dismiss Count VI is due to be granted.

### V. CONCLUSION

For the foregoing reasons, it is ORDERED that the ==Randolph== County Board of ==Education's== motion to dismiss (Doc. # 68) is GRANTED in part and DENIED in part as follows:

(1) The motion to dismiss the state law claims in Counts IV, VII, and VIII and the Fourteenth Amendment substantive due process in Count VI is GRANTED; and

(2) The motion to dismiss the Title VI claim in Count V is DENIED.

It is further ORDERED that Defendants Jeremiah Marquis Thomas and Jimmie Fryer's motion to dismiss (Doc. # 67) is GRANTED.

DONE this 31st day of March, 2022.

**All Citations**

Slip Copy, 2022 WL 988362

## Footnotes

1   As the RCBOE acknowledges, other circuits have decided this issue. For example, the Fifth Circuit has recognized this type of Title VI claim. *See* 🚩 *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (permitting "a Title VI claim premised on a racially hostile environment arising from student-on-student harassment" and holding that the "correct analytical framework for a Title VI student-on-student harassment claim is the deliberate indifference standard").

2   Plaintiffs' Third Amended Complaint fails to allege any policy or custom that caused ==F.V.=='s injuries, which is another fundamental flaw in the pleading. (Doc. # 65, ¶¶ 53–59.) It is not necessary to decide the motion on this basis because there are no allegations that plausibly show an underlying substantive due process violation.

3   "It is well-established that 'schoolchildren are not in a custodial relationship with the state.' " 🚩 *Hernandez*, 982 F.3d at 1329 (quoting 🚩 *Nix*, 311 F.3d at 1378). This is odd, considering state compulsory ==education== laws, but it nevertheless is currently the law of this circuit.

4   Because Ms. ==Vargas's== loss-of-services claim in Count VIII is "derivative of, and dependent upon the outcome of," Counts IV and VII, separate analysis of Count VIII is not necessary. *Ex parte Progress Rail Servs. Corp.*, 869 So. 2d 459, 462 (Ala. 2003). Count VIII has the same destiny as Counts IV and VII.

5   The origin under Alabama law for Plaintiffs' independent claim for "breach of duty to supervise" against the individual Defendants is unclear (Doc. # 65, at 18), but, the claim, by its own terms, has as an element a duty owed.

6   The Third Amended Complaint refers to both the Student Harassment Protection Act and the Jamari Terrell Williams Student Bullying Prevention Act. The Student Harassment Protection Act was renamed the Jamari

Terrell Williams Student Bullying Prevention Act in 2018. *See* Ala. Code § 16-28B-1 (2018 Amendment Notes).

---

                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---