# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| DESERAE TURNER, individually; M.T. and B.T., both minors, by and through their mother, LEKISHA TURNER; and J.T.M. and J.R.M., both minors, by and through their mother, JESSICA MURRAY; and JESSICA MURRAY, individually, | CIVIL ACTION <br><br> Case No. 4:22-cv-00113-LMM |
| Plaintiffs, | |
| v. | |
| FLOYD COUNTY SCHOOL DISTRICT; | |
| Defendant. | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS

COMES NOW, Defendant Floyd County School District, and pursuant to Local Rule 56.1(B)(3) submits this Response to Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts, stating as follows:

**Racial Harassment at Coosa High School**

**J.R.M.**

1.     J.R.M. enrolled at Coosa High School ("Coosa High" in the fall of 2020. (**J.R.M. Deposition ("J.R.M Dep."), P. 18, L.10-12**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

2.      J.R.M. was subjected to racial slurs by various white classmates at Coosa High including the use of the slur "n*****" on multiple occasions. (***Id***. **at P. 33, L.14-20; P. 36, L.10-13**) ("four to six times" in one teacher's class); (***Id***. **at P. 45, L.23-P.46, L.7; P. 49, L.6-P. 50, L.11;  P. 123, L.10-15).**

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

3.      On other occasions, students called J.R.M. a monkey, (**Id. at P. 53, L.2-7**), a "nappy-aired niglet," (**Jessica Murray Deposition ("J.Murray Dep."), P. 36, L.4-6**), and a "nappy-head, n***** monkey". (***Id*. at P. 38, L. 3-4**.).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

4.       J.R.M. endured sexual taunts, including a white male student's remark that he was  "going to take [her] back to the slave days," (***Id*. at P. 45, L.7-12, P. 140, L.11-P. 141, L.15**) and "do you how you ancestors [were done]" a veiled reference to the vile antebellum practice of raping enslaved black women.

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not support the Respondent's fact.

5.     White male students directed racist and sexist comments at J.R.M. body, to the effect that "all black girls got big asses." (***Id*. at . P. 47, L.14-16.**)

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.

6.     J.R.M. observed whites students wearing paraphernalia of images the flag of the Confederate States of America, a group of Southern states that waged a violent pro-slavery insurrection against the United States government from 1861 to 1865. (**J.R.M. Dep. P.23, L.4-7** (Confederate flag image on hoodies); **P. 52, L.7-10** (Confederate flag insignia on student belt buckle)).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

7.     Confederate themed images on white students' clothing were so commonplace at Coosa High that J.R.M. would see them two to five times a day, on a typical day. (***Id.*, P. 143, L.19-25**.)

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

8.      Despite the visible prevalence of Confederate images at Coosa High, J.R.M. noticed that the students displaying the images would wear them through the day, indicating that administrators never "dress coded" these students by directing them to remove the images. (***Id.*, P. 144, L.20-P. 145, L.6**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not support the Respondent's fact.

9.      In 2021, J.R.M. saw social media images of a Confederate flag being unfurled on campus grounds by several students on a school themed "Farm Day", (***Id.*,  P. 56, L.5-19; P. 58, L. 8-24; P. 59, L.6-19**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

10.     One of J.R.M.'s teachers displayed a Confederate flag in her classroom. (***Id*., P.132, L.2-P.134, L.7**).

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the Respondent's fact is not material.

11.     J.R.M. observed a video of another white student brandishing on school grounds an object that was tied like a noose and that this student proclaimed was a noose. (***Id*., P. 57, L.6-10**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not support the Respondent's fact.

12.     J.R.M. either reported incidents of racial harassment she experienced to her teachers and administrators, or the teachers heard the remarks themselves, with no meaningful consequences. (***Id.*, P. 33, L.18-P. 34, L. 8** (teacher overhead J.R.M. called a "n*****" but did nothing more that tell the children to stop talking); **P. 36, L.14-P. 37, L.6** (no evident discipline, student was simply told not to use the term "n*****" again); **P. 46, L.1-P.47, L.11** (Assistant Principal Martin visited the classroom the day after J.R.M. reported to her the word "n*****" was used by a student, but the student remained in class)).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not support the Respondent's fact.

13.     As a result of her constant exposure at Coosa High to racist words and symbols that she found racially offensive, J.R.M. became overwhelmed and stressed by going to school, and was prescribed treatment for depression. (**J. Murray Dep. P. 127, L.3-9**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not

support the Respondent's fact.  Defendant objects on the ground that the Respondent's fact is not material.

14.     J.R.M.'s grades declined and she often expressed that she did not want to go to school. (***Id.* at P. 129, L.12-20**): For two months in a row, J.R.M. came home from school crying everyday because she was called a "nappy-headed Black monkey." (***Id.* at P. 135, L.24-P.136, L.3**).

**J.T.M.**

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.

15.     J.T.M. entered Coosa High in the fall of 2019. (**J.T.M. Deposition ("J.T.M. Dep."), P. 16, L.21-25**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

16.     During J.T.M.'s time at Coosa High she was called a "slave" and told she could go back to slavery by a white student wearing a Confederate flag belt buckle. (***Id.*, P. 68, L.16-22**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support Respondent's fact.

17.     Multiple white students pulled J.T.M.'s hair and called her "n*****" during class. (***Id.*, P. 17, L.13-P. 20, L.21).**

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

18.     When J.T.M. got in an argument in class in which she and a white student exchanged words and called each other "n*****",  it is J.T.M. who received in-school suspension that prevented her from going to class while the white student was not disciplined at all. (***Id.*, P. 18, L.6-L.P.22:1).**

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which Respondent's rely and the Respondent's evidence does not support the Respondent's fact.

19.     J.T.M's time at Coosa High was limited because she spent her 11th grade year attending an off-campus half day program offered by FCSD called College Career Academy and by senior year, she accumulated enough credits her senior year through online offerings that she could avoid going on campus at Coosa High. (***Id.*, P. 28, L. 2-9).**

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the Respondent's fact is not material.

20.     Jessica Murray made repeated complaints to Coosa High principals and assistant principals, as well as Superintendent White,and FCSD's Director of

Student Services, about the racial harassment J.R.M. and J.T.M. experienced. (**J. Murray Dep. P. 37, L.1-18; P. 46, L.4-13; P. 48, L.3-14; P. 149, L.17-P. 150, L.22).**

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support Respondent's fact.

## Deserae Turner

21.     Deserae Turner enrolled at Coosa High in the fall of 2019. (**Deserae Turner Deposition ("D.Turner Dep."),. P. 30, L.22-24**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

22.     During Deserae's freshman year at Coosa High School, a student told her a racist "joke" ending with the punchline, "I have black people hanging from my family tree," an obvious reference to lynching. (***Id.*, P. 36, L.5-15**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

23.     During Deserae's sophomore year, after she posted a message about the murder of George Floyd on her social media page, a Coosa High School student responded by sending her a message stating, "there's no way that n***** couldn't breathe . . . look at that big nose [sic] that he have on him." (***Id.* at P. 41, L.14-19**).

**DEFENDANT'S RESPONSE:** Defendant objects to the admissibility of the evidence upon which the Respondent relies.

24.    On multiple occasions, students made fun of Deserae's braided hor locked hairstyle, comparing it to "worms" or "snakes" and calling her "Medusa." (***Id.* at P. 42, L.5-13**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

25.    At lunchtime, a white student called Deserae a "monkey" while she was eating a banana. (***Id.* at P. 93, L.7-21**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

26.    Deserae heard a table of white laughing at one child's open use of the word "n*****". (***Id.* at P. 36, L.16-19; P. 37, L.20-24**) ("I just, like, felt, my heart sank because I was like, did he really just say that.").

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

27.    A white teacher of Deserae's joked in class that blacks could not be vegetarians "because y'all love chicken too much." (***Id.* at P. 38, L. 8-25**).

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the Respondent's fact is not material.

28.     Deserae saw explicitly racist social media posts by white classmates, ranging from a racist, "n-word" laced rant by a student named Brody McJunkin (***Id.* at P.69, L.16-22**); a post with the epithet "F*** N******" vandalized on the school's running track (***Id.* at P. 71, L.13-25**); a horrific image of a black child in a bucket eating a watermelon, with the phrase, "Niglet for sale." (***Id.* at P. 74, L.6-24**).

**DEFENDANT'S RESPONSE:**  As to the statement that Deserae saw social media posts by a student named Brody McJunkin, Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.  As to the statement that Deserae saw a post on the school's running track, and a post of a black child in a bucket, Defendant objects to the admissibility of the evidence upon which the Respondent relies and Defendant objects on the ground that the Respondent's fact is not material.

29.     Deserae reported the image of the black child in a bucket to Assistant Principal Martin, who said nothing could be done because the post was not made on school grounds. (***Id.* at P. 77, L.9-18**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

30.    In the fall of 2021, Deserae witnessed the social media posts of white children brandishing a Confederate flag on school grounds. (***Id*. at P. 87, L.10-19**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

31.    Deserae was one of a group of black students, including J.T.M, B.T., and likely M.T., who were taunted by a white student wearing a Confederate belt buckle, who jibed at them, "It's not my fault y'all were slaves...This is heritage, not hate." (***Id*. at P. 134, L.1-P. 135:L.1**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

32.    It was also Deserae's experience that student clothing with Confederate images was ubiquitous at Coosa High. (***Id*. at P.139, L.20-P.140, L.25**) ("It was very common. It, was, like, really a daily thing.")).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

33.    Deserae could tell them Confederate images on student clothing were tolerated at Coosa High because she observed students wearing the images all day instead of being directed to remove them. (***Id*. at P. 162, L.1-8**).

**DEFENDANT'S RESPONSE:** Defendant objects to the admissibility of the evidence upon which the Respondent relies.

34.     When Deserare complained of the widespread Confederate symbolism, she was told "you live in the South, you got to get used to it." (*Id*. **at P.163:18-25**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

35.     Deserae repeatedly reported the racist taunts and remarks she heard at school, to no avail. (*Id*. **at P. 155, L. 8-18** (after Deserae told a teacher she had just just been called a "n*****", "She just told me to sit back in my seat"); *Id*. **at P. 155, L. 24-P. 156, L. 14)** (after Deserae reported her teachers' black people and fried chicken comment to other teachers, she was told, "that's just how Coach Ross is"); *Id*. **at P. 157, L.15-23** (after Brody McJunkin called her a "n*****" in class, her teacher told her "to ignore him")).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

36.     It is Deserae's recollection that she reported racist incidents to Coosa High staff and administrators each single year she attended the school "more times than I can remember." (*Id*. **at P. 158, L. 11-22**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

**M.T.**

37.     M.T. attended Coosa High for two and a half years before transferring at the beginning of the 2022-23 academic year because she found Coosa High "draining and depressing." (**M.T. Deposition ("M.T. Dep"), P. 11, L.5-6; P. 15:6-9**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

38.     A white classmate held a Confederate flag over M.T.'s head and called her a "n******" multiple times. (***Id*. at P. 64, L.18-21**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

39.     M.T. reported this incident of intimidation to Assistant Principal Martin, and even pointed out the student to Martin, but Martin took no action. (***Id*. at P.76, L.18-20**).

**DEFENDANT'S RESPONSE:** Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

40.     Slurs like "n*****" and "porch monkey" were so commonplace at Coosa High that M.T. heard them "50 to a [100] times during her two academic years at the school. (***Id*. at P.22, L.21-P.22,L.15**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

41.     M.T. saw racist rant videos posted by her classmate Brody McJunkin on social media where he described how "he hate[s] all "n******" and how he [doesn't] want to be around "n******"), and proclaimed, "kill all "n******"." (***Id*. at P.29, L.5-13; P.57, L.6-9**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

42.     M.T. also saw the video of a child in a bucket, which she understood was posted by a white student named Emmy. (***Id*. at P. 34, L.1-23**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

43.     On yet another instance, a white student carried an instrument into class that he called a "whip", and said to M.T., "Do you know what this is?...Why don't you know? You should know. It's what we used to whip you all with." (***Id*. at P. 40, L.2-20**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

44.    M.T. would observe other black children crying or in visible distress at school because they had just been called a "n*****". (***Id*. at P.43, L.16-23**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.

45.    One time, M.T. reported to a substitute teacher that a white student shared a social media post with the term "n*****", to which the teacher responded, "everybody should be allowed to say "n*****" …because African-Americans are allowed to say it." (***Id*. at P. 68:1-P.69:8**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

46.    M.T. recalls seeing posts on social media that students had staged a reenactment of the George Floyd murder in the hallways at Coosa High. (***Id*. at P.80, L.11-19**).

**DEFENDANT'S RESPONSE:**   Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

47.     While M.T. was waiting for a school bus, M.T., J.TM., and B.T. had an encounter with a white student who said, "You-all are slaves…that's what you used to be called. You-all are "n******". (***Id*. at  P. 77, L.5-11**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

48.     M.T. observed students wearing Confederate insignia "almost every day." (***Id*. at P.100, L. 4-8**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

49.     When M.T. reported a student actually carrying a Confederate flag to Assistant Principal Martin, responded that "the flag wasn't hate towards anyone and it didn't make students feel uncomfortable. It was for heritage." (***Id*. at P.98, L.15-21**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

50.     M.T. reported the racist Brody McJunkin videos to Principal Turrentine and then-Assistant Principal Cox. (***Id*. at P. 115, L.3-8**): Turrentine's response was

it was M.T. who was at fault and that M.T. might be expelled because she was putting McJunkin in danger by reposting the videos, a sentiment Cox echoed. (*Id.* **at P. 115, L.17-20; P. 118, L.15-22**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

51.    M.T. constantly reported racist incidents reported to Coosa High administrators "on a daily basis, almost every day that I was at school and I lost count." (*Id.* **at P. 119, L.1-16**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

52.    One time, McJunkin bragged to M.T. that she should stop reporting his racist behavior "because they're not going to do anything to [me]." (*Id.* **at P.124, L.11-17**).

**DEFENDANT'S RESPONSE:** Defendant objects to the admissibility of the evidence upon which the Respondent relies.

53.    As a result of "being called a 'n*****' continually day by day and called a nappy headed-niglet", M.T. "got very, very depressed" to the point that she no longer wanted to attend school; her grades plummeted, and she had to repeat her ninth-grade year. (*Id.* **at  P. 127, L.5-13).**

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

**B.T.**

54.     B.T., a tenth grader, is in her third year at Coosa High. (**B.T. Deposition ("B.T. Dep."), P. 9, L.17-P.18, L.1**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

55.     Between 2020 and 2021, B.T. saw the racist McJunkin videos on social media (***Id*. at P. 14, L.18-25**) the "niglet for sale" images another white student posted, (***Id*. at P. 21, L.21-P.22, L.17**), and she observed and saw videos of a white students carrying a Confederate flag on school grounds. (***Id.* at P.24, L.25-P.25, L.21**).

**DEFENDANT'S RESPONSE:**  As to the statement that B.T. saw McJunkin videos on social media and that she observed and saw videos of white students carrying a Confederate flag, Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.  As to the statement that B.T. saw the "niglet for sale" images, Defendant objects to the admissibility of the evidence upon which the Respondent relies.

56.     B.T. was present during the incident where a white student with a Confederate flag belt buckle told B.T., J.T.M., M.T., and Deserae that "You-all used to be slaves." , an encounter B.T. says Assistant Principal Martin would have overhead (sic). (*Id.* **at P. 28, L. 3-15**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not support Respondent's fact.

57.     Like her sisters who are Plaintiffs, J.T.M. and J.R.M., B.T. was subjected to unrelenting racist taunts at Coosa High, which she described as "traumatic." (*Id.* **at P. 29, L.3-7**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

58.     B.T. described a culture at Coosa High in which black children constantly had to put up with hearing racist slurs from their white classmates while white administrators did nothing to stop the harassment. (*Id.* **at P. 32, L.16-24**).

**DEFENDANT'S RESPONSE:**   Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

59.     B.T. observed "many" white students wearing Confederate gear. (*Id.* **at P. 45, L.5-P.46, L.23**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

60.   B.T. saw videos of the various reenactments of the killing of George Floyd. (***Id*. at P. 47, L.11-P.49, L. 23**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact and Respondent's fact is not material.

61.   B.T. in deposition recounted several incident where white students loudly screamed the term "n*****" in the presence of Assistant Principal Martin and other teachers, who did nothing in response. (***Id*. at P. 65, L.16-P.67:10**).

**DEFENDANT'S RESPONSE:**   Defendant objects to the admissibility of the evidence upon which the Respondent relies and the Respondent's evidence does not support the Respondent's fact.

62.   B.T. believed that the failure to punish or discipline racism was to the point that "I felt like the administrators had….made a comfortable space for racists to be openly racist and say racially insensitive things." (***Id*. at P. 30, L.5-7**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and Respondent's evidence does not support Respondent's fact.

## FCSD's Failures to Respond to Racial Harassment at Coosa High School

63.     Principal Cox and his predecessor Principal Turrentine acknowledged receiving complaints about racial harassment at Coosa High School during the 2020 and 2021 school years. (**Judson Cox Deposition ("Cox Dep."), P. 84, L.13-20**) (agreeing with counsel's question that there were "a lot of complaints . . . coming in from Black children in the fall of 2021 about racist incidents at Coosa High").

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

64.     Jessica Murray, the mother of J.T.M. and J.R.M, made numerous complaints to Coosa High administrators or personnel in the Superintendent's office. (**J**. **Murray Dep. P. 149, L. 17-P.150, L.4**) (describing 20-30 complaints about racial mistreatment);

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

65.     Lekisha Turner, the mother of Deserae Turner, M.T. and B.T. met with Coosa High administrators to complain about racial harassment of her children on multiple occasions. (**Lekisha Turner Deposition ("L.Turner Dep."), P. 57, L.2-15; P.61, L.7-15**) (meeting with Assistant Principal Martin to discuss racial slurs by students and teacher's defense of the term "n\*\*\*\*\*"); (***Id*. at P.84, L.8-23**) (meeting with Principal Turrentine to disgust racist social media posts by Brody McJunkin).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

66.     Principal Cox discussed the racial tensions at Coosa High School with district administrators, including the Director of Student Services and Superintendent White. (**Cox Dep. P. 102, L.11-P. 103, L.12;**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

67.     There is a distinct difference in how Coosa High administrators addressed threats of racist violence and how forcefully they acted to deter protests against racism at the school: for example, while armed police officers arrived on campus in October 2021 the day an anti-racism protest was conducted, no police presence occurred administrators learned of a video by McJunkin that said "Kill the "n******". (***Id.*, P. 156, L.7-P.157,L.3**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

68.     While Cox made an intercom announcement discouraging the anti-racism protest, he felt no urgency to address the student body about racist threats against African-Americans in videos generated by a Coosa High student (***Id.*, P. 193, L.6-P.195,L.4**).

**DEFENDANT'S RESPONSE:**   Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

69.     In similar fashion, although Cox contends that he suspended several of the plaintiffs because they engaged in disruptive and loud behavior in the school lobby, later that same day, a a group of white students heckled the same children with racist epithets in full view of several administrators: there is no evidence the white children were disciplined. (**D.Turner Dep. P. 164, L.3-23**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which Respondent relies and the Respondent's evidence does not support the Respondent's fact.

**The Student Protest Against Racism**

70.     In October 2021, a multiracial group of students began organizing a protest against racism at Coosa High School. (**J.R.M. Dep. P. 62, L.22-P68, L.12.**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

71.     Organizers planned for students to participate in a "peaceful" protest on a Friday, October 8, "in between classes . . . so that our school work would not be disturbed." (**B.T. Dep. P. 37, L.1-7; M.T. Dep. P. 105, L.25-2**) ("We decided [to

have the protest] in between classes so we wouldn't be missing out on anything that's going on in the classes, and so we wouldn't be counted absent.").

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the Respondent's fact is not material.

72.     After one organizer unsuccessfully attempted to obtain a permit to host the protest on the campus of Coosa High School, organizers "picked a spot that's a street away from the school" as the protest location. (**J.R.M. Dep. P. 75, L.11-P.76, L.11**).

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the Respondent's fact is not material.

73.     FCSD admits that the protest ultimately occurred "off campus . . . . on a public road," with no part of the protest occurring on school grounds. (**Glenn White Deposition ("White Dep"), P. 156, L.1-12).**

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the Respondent's fact is not material.

74.     On the morning before the planned protest, Assistant Principal Martin and a school resource officer escorted Deserae Turner from her class and informed her that they had received reports that she was planning a protest, and she could "go to jail" because "it's illegal to protest on school property." (**D. Turner Dep. P. 104, L.3–P. 104 L.19.**)

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the

Respondent's fact is not material.

75.   School administrators described the planned protest to Deserae as a

"riot." (***Id*. at P. 105, L.21-22**).

**DEFENDANT'S RESPONSE:**  Defendant objects on the ground that the

Respondent's fact is not material.

76.   Later that same morning, Principal Cox made the following

announcement over the school intercom:

> The administration is aware of tomorrow's planned
> protest. Activities of this kind will not be allowed at Coosa
> High School. We're planning on a normal school day.
> Extra staff and police will be present here at school. If
> students insist on participating in these types of activities,
> they will be disciplined [in] accordance. They will be
> disciplined for encouraging unrest in the school
> environment. Additionally, if you are in possession of
> flyers or publicity materials related to this activity, you
> should bring these to the office immediately. At this point
> in time, possession of these materials will also be
> considered a discipline issue. Please know that all aspects
> of our Floyd County schools behaviors -- student behavior
> policy -- Floyd County school student behavior policy,
> including dress code, will be respected and enforced. If
> you have concerns about these policies and any activities
> here at Coosa High School, please speak with me or any
> of our counselors.

(**Cox. Dep. P. 129, L.23-P. 130, L.20**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

77.     Cox invited any students who had questions about his announcement to gather in his office, and soon after, a group of approximately students began to gather in the administrative lobby, including the participants in a group chat that planned the protest. (**D. Turner Dep. P. 114, L.1-24**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

78.     The group of students who gathered in the lobby included J.R.M., B.T., M.T., Deserae, and several organizers of the protest, who were black, white, and Hispanic. ( **J.R.M. Dep. P. 149, L.7–P. 152, L.1**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

79.     There were raised voices during the impromptu gathering in the lobby. (D. Turner Dep. P. 117, L.25–118,L.2), but Superintendent White testified that from his recollection of a video of the incident, that only one of the children in the lobby was using profanities and yelling. (**White Dep. P. 173, L.1-14**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies, and Respondent's evidence does not support the Respondent's fact.

80.    At least one other child who was non-African-American named Lilly also admitted to Lekisha Turner that she in a disruptive manner after the gathering in the lobby. (**L.Turner Dep. P. 123, L.5-9**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and the Respondent's fact is not material.

81.    Coosa High suspended six children the day before the protest: Deserae, M.T., B.T., J.R.M., and two other black students. (**Cox. Dep. P. 162, L.9-P.163, L.1**; **D. Turner Dep., P. 118, L.18; M.T. Dep. P. 111, L.9–11; B.T. Dep., P. 37, L.16-18; J.R.M. Dep. P. 95, L. 13-14**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

82.    All six of the students suspended the day before the protest received five day out-of-school suspensions. (**Cox. Dep. P. 176, L.2-11**).

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

83.     Despite her admittedly disruptive behavior, the white student Lilly told Lekisha Turner that she was not disciplined. (**L.Turner Dep. P. 123, L.14-17**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and the Respondent's fact is not material.

84.     Multiple White students who organized and participated in the protest were not disciplined or received less serious discipline of in-school suspensions. **B.T. Dep. P. 53, L.17-P.54, L.6; P. 55, L.11-16**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies and the Respondent's fact is not material.

85.     While six African-American students who had some role in planning the anti-racism protest were suspended for five days, a large number of students simply failed to attend school the day of the protest, but were never punished for skipping class. (**White Dep. P. 161, L.8-16**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

86.     At the esd of 2021, another multi-racial coalition of students planned a second protest at Coosa High School to demonstrate "that even though [FCSD] suspended us for the first one . . . we still had motivation and determination to continue and speak our voices." (**J.R.M. Dep. P. 98, L.18-24**). Once again, Black students who participated in the protest were suspended from school, while white and Hispanic students who participated in the protest received only in-school suspension. (*Id.* **at P. 101, L.1-P.102, L.25**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

## Viewpoint Discrimination in Enforcement of the Dress Code

87.     Under the FCSD code of conduct, school principals have the discretion and authority to interpret and enforce dress code requirements at their individual schools. (**White Dep, P. 31, L.6-9**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

88.     The FCSD school board approves the disciplinary policies, including the student code of conduct, that are enforced on a day-to-day basis by school administrators. (*Id.* **at  P. 27, L.2-7; P.28, L.2-9**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

89.     Students at Coosa High were not permitted to wear clothing displaying words or imagery associated with the Black Lives Matter movement, including shirts displaying words or imagery referring to the murder of George Floyd. (**J.R.M. Dep. P. 32, L.3-P. 33, L.10**; **L. Turner Dep. P. 116, L. 17-P. 118, L.9; M.T. Dep. P. 93, L. 11-P.96, L.16**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

90.     Coosa High School prohibited clothing displaying words or imagery associated with the Black Lives Matter movement because administrators deemed such clothing "political" (policies "didn't allow political statements being displayed in the school") (J.R.M. Dep. P. 33, L.2-5); and because they concluded that references ro Black Lives Matter made the other students feel "very uncomfortable and was out of dress code," (***Id.***, **P. 93, L.21-P. 94, L.1**; **L. Turner Dep. P. 117, L.16-P. 118, L.4**).

**DEFENDANT'S RESPONSE:** Defendant objects as the Respondent's evidence does not support the Respondent's fact.

91.     Despite the claims of student administrators that Black Lives Matter imagery ran afoul of the school's policies against overt political speech, students were permitted to wear paraphernalia supporting Donald Trump's reelection campaign in 2020. (**D.Turner Dep. P. 162, L.1-12**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.  Defendant objects on the ground that the Respondent's fact is not material.

92.    Displays of Pro-Trump paraphernalia were an almost everyday occurrence at Coosa High during the 2020 election cycle. (*Id.* **at P. 162, L.14-15**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.  Defendant objects on the ground that the Respondent's fact is not material.

93.    When students were observed wearing clothing displaying words or imagery associated with the Black Lives Matter movement, administrators gave them three options: they could either (1) change their shirt, (2) turn their shirt inside-out, or (3) serve an in-school-suspension for the remainder of the school day. (**M.T. Dep. P. 93, L. 20-P. 94, L.10, P. 95, L.13-18;  L.Turner Dep. P. 116, L.17-25**; **J.R.M. Dep. P. 32, L.4-12, P. 33, L.2-5).**

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

94.    A student's choice to wear clothing with imagery or words associated with the Black Lives Matter movement is not disruptive to the educational environment at Coosa High School. (**Cox Dep. P. 24, L. 3-P. 25, L.9**).

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly

consider the Respondent's evidence for purposes of the Summary Judgment

Motion.

95.    By contrast, a student's choice to wear clothing displaying the

Confederate flag violates the terms of FCSD's student dress code. (**Id., P. 77, L.8-**

**14).**

**DEFENDANT'S RESPONSE:** Defendant concedes that the Court can properly

consider the Respondent's evidence for purposes of the Summary Judgment

Motion.

96.    Students wearing clothing displaying the Confederate flag at Coosa

High made Black students, including Plaintiffs, very uncomfortable. (**J. Murray**

**Dep. P. 147, L.14-P.148, L.7, P. 149, L.9-16**).

**DEFENDANT'S RESPONSE:** Defendant objects to the admissibility of the

evidence upon which the Respondent relies.  Defendant objects on the ground that

the Respondent's fact is not material.

97.    Nevertheless, students routinely wore clothing displaying the

Confederate flag, or displayed the flag itself at Coosa High School, without being

required to change or facing discipline. (**J.R.M. Dep. P. 148, L.2-P.149, L.6**; **D.**

**Turner Dep. P. 138, L.23-P. 140, L.25**; **M.T. P. 100, L.4-25; B.T. Dep. P. 45, L.5-**

**P. 46, L.23**; **J. Murray Dep. P. 113, L.15-P. 114, L.4, P. 147**, **L.5-L.13**; **L.Turner, Dep. P. 145, L.9-P. 147, L.15**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.

98.    School and district officials were aware that students wore clothing displaying the Confederate flag or displayed the flag itself at Coosa High School because they received numerous complaints about such incidents. (**Cox Dep. P. 71, L.2-23; J. Murray Dep. P. 98, L.2-14).**

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

99.    Administrators permitted students to wear clothing displaying the Confederate flag based on their belief that the flag represented "heritage, not hate." (**L. Turner Dep. P. 117, L.15-P. 118, L.4; M.T. Dep. P.  98, L.15-21**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

## Discriminatory Enforcement of the Social Media Policy

100.  On at least two occasions, FCSD refrained from punishing white students who published racist content on their social media pages on the grounds that students could not be punished for content produced off-campus and outside of

school hours. (**White Dep. P. 60, L.1-P.61, L.25**; (**Doc. 49-1**, **Martin Declaration at ¶ 5**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

101.   School officials threatened to punish Plaintiffs for re-posting their classmates' racist content on their own social media pages in an effort to expose the racism they were being subjected to at Coosa High School. (**L. Turner Dep. P. 43, L.10-P. 44, L.15; M.T. Dep. P. 115, L. 14-20**).

**DEFENDANT'S RESPONSE:**  Defendant objects to the admissibility of the evidence upon which the Respondent relies.  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

102.   School officials did not know whether Plaintiffs were on or off-campus when they re-posted their classmates' racist content on their own social media pages, or whether they re-posted their classmates' racist content within or outside of school hours. (**White Dep. P. 92, L.1-3**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.  Defendant objects on the ground that the Respondent's fact is not material.

103.   Nevertheless, Superintendent White asserted that it would have been appropriate to discipline Plaintiffs for re-posting their classmates' racist content

irrespective of when or where their actions occurred because "[a]ny event that could disrupt school" could subject a student to punishment, including "off-campus behavior that has the potential to disrupt school [which] can be dealt with under our discipline policy." (***Id.,  96, L.14-22).***

**DEFENDANT'S RESPONSE:**  Defendant concedes that the Court can properly consider the Respondent's evidence for purposes of the Summary Judgment Motion.

## **FCSD's Flagrant Disregard for its Students' First Amendment Rights**

104.   FCSD maintained a custom and policy of prohibiting all forms of protest at all schools, including Coosa High School, during the school day. (***Id.,  P. 161, L.22-23***) ("Any protest during the school day would violate school policy."); (**Cox Dep. P. 132, L.13-14**) ("We don't allow [students] to have protests on a school campus. . . . [T]hat's just not how we're going to conduct business at Coosa [H]igh [S]chool.").

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

105.   This custom and policy included a *per se* ban on possessing or disseminating any materials relating to a protest, (**White Dep. P. 152, L.13-18**; **Cox Dep. P. 132, L.4-13.**).

**DEFENDANT'S RESPONSE:**  Defendant objects as the Respondent's evidence does not support the Respondent's fact.

Respectfully submitted this 19th day of February, 2024.

**HALL BOOTH SMITH, P.C.**

*/s/ Richard N. Sheinis*

_____
RICHARD N. SHEINIS
GA State Bar No. 639865
11215 North Community House Rd.
Suite 750
Charlotte, NC  28277
T:  980-859-0380
E:  rsheinis@hallboothsmith.com
***Attorneys for Defendant***

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in local rule 5.1(C) and 7.1(D).

Respectfully submitted this 19th day of February, 2024.

**HALL BOOTH SMITH, P.C.**

*/s/ Richard N. Sheinis*
_____
RICHARD N. SHEINIS
GA State Bar No. 639865
11215 North Community House Rd.
Suite 750
Charlotte, NC  28277
T:  980-859-0380
E:  rsheinis@hallboothsmith.com
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on February 19th, 2024 **Defendant's Response to Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts** was served electronically upon the lead counsel of record for **Defendant,** listed below:

Artur Davis
HKM Employment Attorneys, LP
2024 3rd Avenue, North Suite 307
Birmingham, AL  35203
T:  205-881-0935
*(admitted pro hac vice)*
E:  adavis@hkm.com
***Attorneys for Plaintiffs***

Harry M. Daniels
The Law Offices of Harry Daniels
233 Peachtree St., NE, Suite 1200
Atlanta, GA 30303
T:  404-620-6110
E:  daniels@harrymdaniels.com
***Attorneys for Plaintiffs***

Shannon Liss-Riordan
Anastasia Doherty
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
T: 617-995-5800
*(admitted pro hac vice)*
E: sliss@llrlaw.ocm
   adoherty@llrlaw.com
***Attorneys for Plaintiffs***

***By: /s/Richard Sheinis***
Richard Sheinis
GA State Bar No. 639865
**Hall Booth Smith PC**
11215 North Community House Road
Suite 750
Charlotte NC 28277
T:  980-859-0380
rsheinis@hallboothsmith.com
***Lead Counsel for Defendant***